1  BONE McALLESTER NORTON PLLC
   STEPHEN J. ZRALEK (*Admitted pro hac vice*)
2  Nashville City Center
   511 Union Street, Suite 1600
3  Nashville, Tennessee 37219
   Telephone:  (615) 238-6305 // Facsimile:  (615) 687-2763
4  Email:  szralek@bonelaw.com

5
   BROWNSTEIN HYATT FARBER SCHRECK, LLP
6  KIRK B. LENHARD (Nevada Bar No. 1437)
   ANTHONY J. DIRAIMONDO (Nevada Bar No. 10875)
7  100 North City Parkway, Suite 1600
   Las Vegas, Nevada 89106
8  Telephone:  (702) 382-2101 // Facsimile:  (702) 382-8135
   Email:  klenhard@bhfs.com
9  Email:  adiraimondo@bhfs.com

10
   Attorneys for Defendant
11 GARRY NEWMAN

12
                    **UNITED STATES DISTRICT COURT**
13
                         **DISTRICT OF NEVADA**
14

15 RIGHTHAVEN, LLC,              |  Case No.:  2:10-cv-01762-JCM -PAL

16              Plaintiff,       |  **DEFENDANT'S MOTION TO DISMISS**
                                 |  **COMPLAINT FOR LACK OF SUBJECT**
17       v.                      |  **MATTER JURISDICTION & LACK OF**
                                 |  **PERSONAL JURISDICTION**
18 GARRY NEWMAN,

19              Defendant.

20

21

22

23

24

25

26

27

28
                                  1
                  Defendant's Motion to Dismiss Complaint

                                                          {00628191.9}

Defendant Garry Newman moves to dismiss the Complaint filed by Plaintiff Righthaven, LLC ("Righthaven") pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.  As set forth in the following Memorandum of Points and Authorities, this Complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because: (a) Righthaven lacks standing to bring this case, and (b) the Copyright Act does not apply extraterritorially, and the alleged infringement in this case occurred in Great Britain.

Under Rule 12(b)(2), the Court also lacks personal jurisdiction over Newman for two reasons: (a) he does not own or control the allegedly infringing website; rather, a limited company organized under the laws of Great Britain does, and (b) he is a resident of Great Britain, who has not purposefully availed himself of the rights and privileges of the State of Nevada, and jurisdiction over him would be manifestly unreasonable.

Dated:  June 28, 2011

BONE McALLESTER NORTON PLLC
By: /s/ Stephen J. Zralek
Stephen J. Zralek, *Admitted pro hac vice*
511 Union Street, Suite 1600
Nashville, TN 37212
szralek@bonelaw.com
(615) 238-6305

BROWNSTEIN HYATT FARBER SCHRECK LLP
Kirk B. Lenhard, Nevada Bar No. 1437
Anthony J. DiRaimondo, Nevada Bar No. 10875
100 N. City Parkway, Suite 1600
Las Vegas, NV 89106
klenhard@bhfs.com
adiraimondo@bhfs.com
(702) 382-2101

Attorneys for Defendant
GARRY NEWMAN

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTUAL BACKGROUND**

This is a copyright infringement action brought by Plaintiff Righthaven, LLC ("Righthaven") against Defendant Garry Newman ("Newman").   Newman is a citizen and resident of Great Britain.   See Decl. of Garry Newman at ¶ 2, filed contemporaneously herewith.[1]  He was born in England and has resided there his entire life.  Id.  He has never been to Nevada, and has never conducted or solicited business there.  Id. at ¶¶ 3, 13-14.

Righthaven alleges that it owns the copyright in a newspaper article entitled: "'Death ray' scorched hair," (the "Article"), attached to the Complaint as Exhibit 1.  (Doc. 1 at ¶ 6).

The Article describes an architectural curiosity: a "concave reflective surface" on the outside wall of a skyscraper – the Vdara Hotel at CityCenter on the Strip in Las Vegas – that directs the suns rays toward guests at the hotel's swimming pool, melting their plastic cups and shopping bags, and singeing their hair.  See Ex. 1 to Complaint.   The phenomenon is so powerful, apparently, that it has earned the nickname "Vdara death ray."  Id.

The Complaint alleges that Newman is the registrant and administrative contact for the website facepunch.com (the "Website").  Doc. 1 at ¶ 4.  It also alleges that Newman allowed the Article to be reproduced on the Website (as demonstrated in Exhibit 2 to the Complaint), in violation of the copyrights owned by Righthaven.  Id. ¶¶ 6-8.

Although Newman concedes he is the individual listed at the domain registrar as the contact for the Website, he does not personally own the Website or control it in his individual

---

[1] The Court may examine extrinsic evidence without converting the motion to dismiss into a motion for summary judgment when determining subject matter jurisdiction, see Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), or personal jurisdiction.  See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir.2001).

3

capacity.  Newman Decl. at ¶ 4.  Rather, the Website is owned by Facepunch Studios Ltd., which is registered as a Limited Company in the United Kingdom, organized under the laws of Great Britain.  Id.  A certified copy of the Certificate of Incorporation of Facepunch Studios Ltd. (the "Company") is attached to Newman's Declaration as Exhibit A.  Newman merely has an ownership interest in the Company and is one of two directors of the Company.  Id. at ¶ 5.  The Company has no employees.  Id.

The Website serves as a forum for online game users and enthusiasts.  Id. at ¶ 6.  It provides a place for gamers to share their thoughts on various issues and topics.  Id.  The Website has always been controlled out of the Company's offices in England, and the Company has no other offices.  Id. at ¶ 7.

Exhibit 2 to the Complaint shows that the user who posted the alleged unauthorized reproduction uses the name "Wii60."  Newman Decl. at ¶ 9.  The user name "Wii60" does not belong to Newman, the Company, or any director or owner of the Company.  Id.  Further, Newman has never used "Wii60" to post content on the Website, nor has any director or agent of the Company.  Id.  Newman does not direct or create content that third parties, such as Wii60, post on the Website, id. at ¶ 10, nor does the Company or any other director or owner of the Company.  Id.

On October 12, 2010, Righthaven filed the instant Complaint.  Prior to filing the Complaint, Righthaven never sent a cease & desist letter requesting removal of the alleged unauthorized reproduction.  Id. at ¶ 11.  Immediately upon learning of Righthaven's allegations, Newman, acting in his corporate capacity with the Company, disabled the thread to the posting that is referenced in Exhibit 2 of the Complaint.  Id. at ¶ 12.  He did this from the Company's offices in England on November 4, 2010.  Id.

4

Newman has never been to Nevada or conducted business there.  Id. at ¶¶ 3, 13.  Further, he has never solicited business in Nevada; designated an agent for service of process in Nevada; held a license in Nevada; incorporated in Nevada; paid taxes in Nevada; or had a bank account in Nevada.  Id. at ¶¶ 3, 14.  Moreover, none of the servers supporting the Website are located in Nevada.  Id. at ¶ 17.

Prior to receiving notice of the Complaint, Newman had never heard of Righthaven or the *Las Vegas Review – Journal*.  Id. at ¶ 15.  As the Website's readership is worldwide and not focused on or limited to any particular geographic region, Newman disagrees with Righthaven's contention that reproduction of the Article on the Website was of specific interest to Nevada residents.  Id. at ¶ 16.  To the contrary, his experience has been that interest in the Website is based on visitors' identity as a gamer, regardless of their residency.  Id.

Given that Newman is a British citizen residing in England, defending this lawsuit in Nevada would be extremely burdensome for him.  Id. at ¶ 18.  He has limited funds and cannot afford to travel to Nevada for the multiple hearings and depositions that would be required.  Id.  Participating by telephone would put Newman at a disadvantage to Plaintiff.  Id.  Having to defend this lawsuit in Nevada would result in a substantial hardship for him.  Id.

### Righthaven's Alleged Ownership of the Article is Under Attack

Righthaven claims to own copyrights in the Article.  Compl. at ¶ 6.  The Copyright Office records indicate that Stephens Media, LLC ("Stephens Media") is the author of the Article.  (Copy of copyright registration information obtained from Copyright Office webpage

5

{00628191.9}

attached hereto as **Exhibit A**.)[2]  Righthaven is listed therein as the copyright claimant, by virtue

of a written assignment.[3]  Id.  Righthaven did not register the Article until October 6, 2010, after

the Article was first published, on September 25, 2010.

In recent weeks, the veracity of Righthaven's allegation of ownership in the Article has

been undermined by Righthaven's filings in some of the 200 similar copyright infringement

cases that Righthaven has brought in this District.[4]  When pressed about its alleged ownership in

these other cases, Righthaven has pointed to several documents showing an alleged assignment

of rights from Stephens Media to Righthaven.  After examining the primary agreement – the

"Strategic Alliance Agreement" or "SAA")[5] – that Righthaven filed in its case against

Democratic Underground, this Court held that Righthaven does not actually own any of the

---

[2] Pursuant to Fed. R. Evi. 201(d), the Court is requested to take judicial notice of facts obtained from Righthaven's putative copyright registration of the Article, as obtained from the Copyright Office website.  The Court may take judicial notice that this is a matter "of public record" and "readily verifiable."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[3] Righthaven did not attach to the instant Complaint a copy of the specific assignment giving it putative rights in the Article, but Righthaven would have no contractual right to bring the present suit without such assignment, and the records from the Copyright Office (attached hereto as **Exhibit A**) indicate that Stephens Media assigned certain putative rights to Righthaven.  In response to Newman's argument that Righthaven lacks standing, it is presumed that Righthaven will need to produce a copy of the SAA, any amendments thereto, and any specific assignment purporting to transfer rights in the Article from Stephens Media to Righthaven.

[4] Pursuant to Fed. R. Evi. 201(d), the Court is requested to take judicial notice of this fact and all facts contained within the declarations Righthaven has previously filed with the District of Nevada in similar cases, and the exhibits thereto.  The Court may take judicial notice because these facts are a matter "of public record" and "readily verifiable."  Reyn's, 442 F.3d at 746 n.6.

[5] Righthaven LLC v. Democratic Underground LLC, No. 2:10-cv-01356-RLH-GWF, at Ex. 1 to Doc. 79 thereto (D. Nev. Mar. 9, 2011) (copy of SAA dated Jan. 18, 2010, attached hereto as **Exhibit B**).  A duplicate copy of the SAA was filed in Righthaven LLC v. Hoehn, and was authenticated by the Declaration of the CEO of Stephens Media, Steven Gibson.  See No. 2:11-cv-00050-PMP-RJJ, at Ex. 2 to Doc. 24 thereto (D. Nev. May 9, 2011) (attached hereto as **Exhibit E**).

6

*underlying copyrights* belonging to Stephens Media, but merely owns the *right to sue* for infringement of Stephens Media's copyrights.[6]  Righthaven LLC v. Democratic Underground, LLC, __ F. Supp. 2d __, 2011 WL 2378186, at *3 (D. Nev. June 14, 2011) (slip copy) (copy attached hereto as **Exhibit D**).  Pointing to Section 7.2 of the SAA, the Court found that the only right that Righthaven is granted under the SAA is "the bare right to bring and profit from copyright infringement actions." Id. at *2.  Finding that "the SAA prevents Righthaven from obtaining any of the exclusive rights necessary to maintain standing in a copyright infringement action," the Court dismissed Righthaven for lack of standing.[7]  Id. at *6.  "As such, Righthaven's complaint is dismissed in its entirety." Id. at *9.

On May 9, 2011, Righthaven amended the SAA.  It filed a copy of the amendment with the Court in a separate lawsuit against defendant Wayne Hoehn.[8]  Despite the amendment, this Court held that Righthaven still lacked standing since the amendment continued to deprive Righthaven of ownership over Stephens Media's copyrights.  Righthaven LLC v. Hoehn, No. 2:11-cv-00050-PMP-RJJ, at Doc. 28 thereto (D. Nev. June 20, 2011) (copy attached hereto as **Exhibit F**).

---

[6] In that case, Democratic Underground moved to unseal the SAA.  In granting that motion, this Court stated: "As I have . . . considered the multitude of cases filed by Righthaven, on the claimed basis that Righthaven owns the copyrights to certain Stephens Media copy, it appears to the Court that there is certainly an interest and even a right in all the other defendants sued by Plaintiff to have access to this material." Democratic Underground, No. 2:10-cv-01356-RLH-GWF, at p. 4 of Doc. 93 thereto (Apr. 14, 2011) (Order Unsealing SAA) (copy attached hereto as **Exhibit C**).

[7] Although not controlling, these decisions are highly persuasive, given the similarity of facts in all Righthaven cases.

[8] Hoehn, No. 2:11-cv-00050-PMP-RJJ, at Ex. 3 to Doc. 24 thereto (D. Nev. May 9, 2011) (Gibson Decl., attaching Clarification and Amendment to SAA) (copy attached hereto as **Exhibit E**).

{00628191.9}

Separately, when Righthaven filed its original Certificate of Interested Parties in October 2011, (Doc. 5), it failed to disclose to this Court and to Newman the "direct, pecuniary interest" that Stephens Media has in the outcome of this case.  Instead, it listed only three parties, none of which was Stephens Media.  <u>Id.</u>  In <u>Democratic Underground</u>, the Court stated that it "believes that Righthaven has made multiple inaccurate and likely dishonest statements to the Court." 2011 WL 2378186, at *9.  Choosing to focus, however, on what it described as "the most factually brazen," the Court reprimanded Righthaven for failing to disclose Stephens Media as an interested party in Righthaven's Certificate of Interested Parties:

> Making this failure more egregious, not only did Righthaven fail to identify Stephens Media as an interested party in this suit, the Court believes that Righthaven failed to disclose Stephens Media as an interested party in any of its approximately 200 cases filed in this District. Accordingly, the Court orders Righthaven to show cause, in writing, no later than two (2) weeks from the date of this order, why it should not be sanctioned for this flagrant misrepresentation to the Court.

<u>Id.</u>  Thereafter, on June 20, 2011, Righthaven filed an Amended Certificate of Interested Parties in the instant case, listing Stephens Media as an interested party.  (Doc. 17).


## II.      LEGAL STANDARD

### A.      Subject Matter Jurisdiction

The plaintiff has the burden of establishing subject matter jurisdiction.  <u>Pesci v. I.R.S.</u>, 67 F. Supp. 2d 1189, 1194 (D. Nev. 1999).  Subject matter jurisdiction is an essential element to every lawsuit and must be demonstrated "at the successive stages of the litigation."  <u>Chapman v. Pure One Imports (U.S.), Inc.</u>, 631 F.3d 939, 954 (9th Cir. 2011) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).  Where subject matter jurisdiction is lacking, a court has no discretion and must dismiss the case.  <u>See Chapman</u>, 631 F.3d at 954.

8

In evaluating a motion to dismiss under Rule 12(b)(1), the Court may consider extrinsic evidence without converting the motion into one for summary judgment.  See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint."  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1052 n.2 (9th Cir. 2003) (citations omitted).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Id. (citations omitted).  "The court need not presume the truthfulness of the plaintiff's allegations."  Meyer, 373 F.3d at 1039.

A central component to subject matter jurisdiction is the question of standing, which requires that the party experience actual or imminent harm.  Lujan, 504 U.S. at 561.  A party's standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at any time.  Fed. R. Civ. P. 12(h)(3); United States v. Hays, 515 U.S. 737, 742 (1995); Chapman, 631 F.3d at 954.  Within the realm of copyright law, 17 U.S.C. § 501(b) allows only the legal or beneficial owner of an exclusive right in a copyright, specified in 17 U.SC. § 106, to sue for infringement.  Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (9th Cir. 2005).

### B.    Personal Jurisdiction

"It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (citations omitted).  The court may

9

consider extrinsic evidence on a motion to dismiss for lack of personal jurisdiction without converting the motion into one for summary judgment.  See id.

Because this action raises a federal question, the issue of whether this Court may exercise personal jurisdiction over a defendant depends on the specific limitations of Nevada's long-arm statute and the constitutional principles of due process.  Myers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001).  In this case, the Complaint comports to allege a cause of action for copyright infringement against a British defendant.  Because the Copyright Act does not provide for nationwide service of process, Nevada's law of personal jurisdiction applies.  Nevada's long-arm statute is co-extensive with the due process principles of the United States Constitution. Myers, 238 F.3d at 1072 (citing Judas Priest v. Second Judicial Dist. Court, 104 Nev. 424, 760 P.2d 137, 138 (1988) (interpreting Nevada's long-arm statute to reach the limits of federal due process)).  Thus, a non-resident party is only subject to personal jurisdiction in Nevada if exercising jurisdiction comports with federal Constitutional due process requirements.  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1977).

Whether this Court, sitting in Nevada, has personal jurisdiction over Newman depends on whether Righthaven has alleged sufficient "minimum contacts" between Newman and the State of Nevada for purposes of general or specific jurisdiction, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

10

## III.     LEGAL ARGUMENT

### A.     The Court Lacks Subject Matter Jurisdiction over this Dispute

#### 1.     *Righthaven Lacks Standing*

"[O]nly copyright owners and exclusive licensees of copyright may enforce a copyright."

Sybersound Records v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008).  Exclusive rights in a

copyright are enumerated in 17 U.S.C. § 106 and include the exclusive rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> [and]
> (3) to distribute copies or phonorecords of the copyrighted work to
> the public by sale or other transfer of ownership, or by rental,
> lease, or lending.

Id. at 1145 n.3.  "The right to sue for an accrued claim for infringement is not an exclusive right

under § 106."  Silvers, 402 F.3d at 884.  "Exclusive rights in a copyright may be transferred and

owned separately, but . . . [there are] no exclusive rights other than those listed in §106."  Id. at

885.  These exclusive rights may be transferred and owned separately, but the assignment of a

bare right to sue is ineffectual because it is not one of the exclusive rights.  Id. at 884.  Since the

right to sue is not one of the exclusive rights, transfer solely of the right to sue does not confer

standing on the assignee.  Id. at 890.  One can only obtain a right to sue on a copyright if the

party also obtains one of the exclusive rights in the copyright.  See id.

Under Silvers and Sybersound, Righthaven lacks standing to bring this lawsuit because it

has *no* rights in the copyrights it claims, as demonstrated by the plain language of at least three

sections of the SAA.[9]

First, under Section 3.3 of the SAA, Righthaven is obligated to reassign the rights to the

Work to Stephens Media if it does not pursue an infringement action within 60 days of the

---

[9] The SAA is referenced surpa at n.5, and attached hereto as **Exhibit B**.

Assignment.  <u>Id.</u> at § 3.3.  Additionally, this section gives Stephens Media the right to direct Righthaven not to pursue an action against an alleged infringer.  <u>Id.</u>  In the end, Righthaven is left with no ownership of any exclusive copyright.

Second, Section 7.2 of the SAA states in pertinent part:

> Despite any such Copyright Assignment, *Stephens Media shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Stephens Media Assigned Copyrights* for any lawful purpose whatsoever and *Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery.* To the extent that Righthaven's maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Righthaven hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Righthaven shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

<u>See</u> SAA at § 7.2, referenced <u>supra</u> in n.5, and attached hereto as **Exhibit B** (emphasis added). Under the plain language of Section 7.2, Righthaven's only right is to sue for infringement. Further, the SAA gives Stephens Media the unilateral right, at any time, to terminate the Copyright Assignment and enjoy a complete right of reversion.  <u>Id.</u>

Third, under Section 8 of the SAA:

> *Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is subject of a Copyright Assignment . . . .*  In order to effect termination of the [sic] any Copyright Assignment, Stephens Media shall be required to provide Righthaven with thirty (30) days prior written notice. Within thirty (30) days after receipt of termination of the [sic] any Copyright Assignment, Righthaven shall commence documentation to effect reassignment of the Stephens Media Assigned Copyrights to Stephens Media.

12

SAA at § 8 (emphasis added).

As this Court held in Righthaven, LLC v. Hoehn, these "carve outs deprive Righthaven of any of the rights normally associated with ownership of an exclusive right necessary to bring suit for copyright infringement and leave Righthaven no rights except to pursue infringement actions, a right which itself is subject to Stephens Media's veto." Case No. 2:11-cv-00050-PMP-RJJ, Doc. 28 at p. 8 (D. Nev. June 20, 2011).

The SAA was entered into on January 18, 2010.  See SAA at p. 1 (attached hereto as **Exhibit B**).  According to Exhibit 1 to the Complaint, the Work was first published on September 25, 2010.  (Doc. No. 1 at ¶ 6, & Exh. 1 thereto).  The Complaint alleges that Newman allowed an unauthorized reproduction to be displayed on facepunch.com on approximately September 25, 2010.  (Doc. No. 1 at ¶ 9).  Based on Section 7.1 of the SAA, Righthaven and Stephens Media agreed to execute "a particularized assignment with respect to each copyright . . . consistent with (and in form and substance the same as) the scope of assignment as set forth in the form of copyright assignment as embodied in Exhibit 1."  See **Ex. B** (SAA at § 7.1) and Ex. 1 thereto (Copyright Assignment Form).  Righthaven did not attach the specific assignment giving it the rights in the Work that is the subject of the present Complaint, but Righthaven would have no contractual right to bring the present suit without such assignment.  On October 12, 2010, Righthaven filed the present lawsuit against Newman.  Thus, it is presumed that Righthaven and Stephens Media executed the assignment regarding the Work some time between September 25, 2010 (date of publication of the Work) and October 12, 2011 (filing of the Complaint).

Months later, on May 9, 2011, Stephens Media and Righthaven amended the SAA by entering into a "Clarification and Amendment to Strategic Alliance Agreement" (the "Clarification").  See Gibson Decl. filed by Righthaven in Righthaven LLC v. Hoehn, No. 2:11-

13

CV-00050-PMP-RJJ, at Ex. 3 to Doc. 24 thereto (D. Nev. May 9, 2011), attached hereto as

**Exhibit E**.  The Clarification amends section 7.2 of the SAA and replaces it with the following:

> Automatically upon execution of a Copyright Assignment, Stephens Media is granted a non-exclusive license to Exploit the Stephens Media Assigned Copyright to the greatest extent permitted by law in consideration for payment in the amount of One Dollar and Zero Cents ($1.00) per year to Righthaven as a license or royalty for each Stephens Media Assigned Copyright as Consideration for the license granted herein (the "License Fee"). Any License Fee required under this amended and revised Section 7.2 shall be retroactive to the Effective Date. In the event that Righthaven decides to Exploit or participate in receipt of royalties from Exploitation of a Stephens Media Assigned Copyright other than in association with a Recovery, Righthaven shall give Stephens Media 30 days prior written notice. The parties acknowledge that failure to provide such notice would be a material breach of this Agreement and would cause Stephens Media irreparable harm, remediable through injunctive relief, which Righthaven and those asserting rights obtained from it shall have no right to oppose.

Id.

Additionally, the Clarification amends section 8 of the SAA and replaces it with sections

8.1 and 8.2, including the following:

> At any time, within its sole discretion, Stephens Media shall have the option, within 14 days of providing notice of the exercise of such option, to purchase all right and title to the Stephens Media Assigned Copyright in consideration for payment in the amount of Ten Dollars and Zero Cents ($10.00) ("Exercised Option").

Id.  The Clarification states it is to be retroactively effective to the original date of the SAA.  Id.

Despite the above "clarification," Righthaven still lacks standing.  As this Court found in

Righthaven LLC v. Hoehn:

> The May 9, 2011 Clarification provides Righthaven with only an illusory right to exploit or profit from the Work, requiring 30 days advance notice to Stephens Media before being able to exploit the Work for any purpose other than bringing an infringement action. Stephens Media has, in its sole discretion, the option to repurchase the Copyright Assignment for a nominal amount within 14 days,

14

> thereby retaining the ability to prevent Righthaven from ever exploiting or reproducing the Work. Stephens Media's power to prevent Righthaven from exploiting the Work for any purpose other than pursuing infringement actions is further bolstered by the Clarification's provision that every exploitation of the Work by Righthaven other than pursuing an infringement action without first giving Stephens Media notice constitutes irreparable harm to Stephens Media. Stephens Media may obtain injunctive relief against Righthaven to prevent such "irreparable harm" and, pursuant to the Clarification, Righthaven has no right to oppose Stephens Media's request for injunctive relief. Accordingly, Righthaven does not have any exclusive rights in the Work and thus does not have standing to bring an infringement action. The Court therefore will grant Defendant's Motion to Dismiss for lack of standing.

Hoehn, Case No. 2:11-cv-00050-PMP-RJJ, at p. 10 of Doc. 28 thereto (D. Nev. June 20, 2011), attached hereto as **Exhibit F**. Similarly, this Court dismissed Righthaven for lack of standing in Democratic Underground, finding that "the SAA prevents Righthaven from obtaining any of the exclusive rights necessary to maintain standing in a copyright infringement action . . . ." __ F. Supp. 2d ___, 2011 WL 2378186, at *6 (copy attached hereto as **Exhibit D**).

For all of the above reasons, Newman respectfully requests this Court to adopt the analysis and conclusion from both Hoehn and Democratic Underground, to find Righthaven lacks standing, and to dismiss the Complaint for lack of subject matter jurisdiction.

### 2.    *The Copyright Act does Not Apply Extraterritorially; Here the Alleged Infringement Occurred in England*

United States copyright laws do not apply extraterritorially. Subafilms, Ltd. v. MGM-Pathe Comm's Co., 24 F.3d 1088, 1095-99 (9th Cir. 1994). "Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending 'no farther than the [United States'] borders.'" Subafilms, 24 F.3d at 1094. For the Copyright Act to apply, "at least one alleged infringement must be completed entirely

15

within the United States."  <u>Los Angeles News Serv. v. Reuters Television Int'l, Ltd.</u>, 149 F.3d 987, 990-91 (9th Cir. 1988) (citations omitted).  The Ninth Circuit has ruled, "[r]ecognizing the importance of avoiding international conflicts of law in the area of intellectual property [] we have applied a more robust version of this presumption to the Copyright Act, holding that the Act presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States."  <u>Omega S.A. v. Costco Wholesale Corp.</u>, 541 F.3d 982, 988 (9th Cir. 2008).

"In cases involving the posting of infringing material on an internet website [] courts have held that the tort occurs where the website is created and/or maintained, usually where the server supporting the website is located, not where the internet website can be seen, because that would be literally anywhere the internet can be accessed."  <u>Cable News Network, L.P. v. Go Sms.com, Inc.</u>, No. 00-Civ-4812 (LMN), 2000 WL 1678039, at * 3 (S.D.N.Y. Nov. 6, 2000) (unpublished) (copy attached as **Exhibit G**).

In the present case, the alleged infringement took place in England, where the website facepunch.com is controlled.  <u>See</u> Newman Decl. at ¶ 7.  As soon as Newman learned of the alleged infringement, he disabled the thread to the post – and he did so from the Company's offices in England.  <u>Id.</u> at ¶ 12.  None of the servers supporting the website are located in Nevada.  <u>Id.</u> at ¶ 17.  Given the robust presumption against the extraterritorial effect of the Copyright Act, this Court has no jurisdiction over the subject matter of this dispute.  <u>E.g.</u>, <u>Omega</u>, 541 F.3d at 988.

16

**B.      The Court Lacks Personal Jurisdiction over Garry Newman[10]**

        **1.      *A British Limited Company Owns the Website, Shielding Newman from Liability under British Law***

"Under English law, a corporation is a separate legal entity from its directors, officers, members, shareholders, or other controlling parties.  This principle was definitively established in the case of <u>Salomon v. A. Salomon & Co., Ltd.</u>, [1897] A.C. 22 (H.L.)."  <u>In re: Tyson</u>, 433 B.R. 68 (S.D.N.Y. 2010).  <u>Salomon</u>[11] is a "landmark" opinion "that continues to be widely cited."  <u>Id.</u> at 79.  Under English law, the company is not an alias for its owners; rather, it is a distinct legal entity.  <u>See id.</u> at 80, n. 18 (citing Lord Herschell).

English law permits the corporate veil to be pierced "only in extremely limited circumstances."  <u>Id.</u> at 80.  Indeed, "veil piercing is quite rare under English law."  <u>Id.</u> at 86.  In <u>Tyson</u>, the federal district court reversed the bankruptcy court on the finding that English law permitted corporate veil piercing to hold British defendants liable for the corporation's obligations.  The <u>Tyson</u> Court explained that U.S. courts have previously noted that "[u]nlike American law, English case law does not provide an enumerated set of factors that a court can evaluate in deciding whether to lift the corporate veil."  <u>Id.</u> at 81 (citations and quotations omitted).  The <u>Tyson</u> Court thereafter surveyed English law and reached the following conclusions, all describing the difficulty of piercing the corporate veil in Britain:

> First, given <u>Salomon</u>, the fact that a person engages in the "carrying on of a business" using a duly incorporated, yet seemingly artificial, entity is not sufficient to justify piercing that entity's veil. . . .  Second, courts may "pierce the corporate veil only where special circumstances exist indicating that [it] is a mere

---

[10] Although Facepunch Studios Ltd. was not named as a defendant and is not presently before this Court, if Righthaven sought leave to amend the Complaint to add the Company as a defendant, the Court would lack personal jurisdiction over it for the same reasons that it lacks personal jurisdiction over Newman.

[11] A copy of the <u>Salomon</u> decision attached hereto as **Exhibit H**.

> façade concealing the true facts." . . .  Third, . . . the plaintiff's ability to recover from the defendant on a veil-piercing theory turns on whether the defendant had already incurred some liability to the plaintiff at the time he interposed the corporate structure. . . . Fourth, where the plaintiff may recover in fraud or "deceit" against a defendant directly, that path is preferably to indirect liability via veil-piercing. . . .  Finally, . . . English courts have observed that parties may avoid the harsh effects of the <u>Salomon</u> principle by the exercise of due diligence, for instance, by contracting around a potential problem [on the front end].

<u>Id.</u> at 86-90.

In the present case, Newman is protected from personal liability and the Court lacks personal jurisdiction over him.  He does not own the website facepunch.com; rather, the website is owned by Facepunch Studios Ltd., a British Limited Company.  <u>See</u> Newman Decl. ¶ 4.  The Complaint alleges no facts justifying piercing of the corporate veil, and Righthaven has not even made such a request.  Accordingly, the Complaint should be dismissed against Newman.[12]

### 2.    *No Personal Jurisdiction Exists over Newman*

In addition to the above argument that English corporate law shields Newman from individual liability for the infringement alleged in the Complaint, American legal principles demonstrate that this Court has neither general nor specific personal jurisdiction over Newman.

In its Complaint, Righthaven alleges that the Court has subject matter jurisdiction, (Doc. 1 at ¶ 5), but Righthaven is silent regarding explicit allegations of personal jurisdiction, either general or specific.  <u>See</u> Doc. 1.  It is intriguing that Righthaven omitted reference to the fact that Newman is a resident of Great Britain in the Complaint when it clearly was aware of his

---

[12] Even if Righthaven claims to be traveling under theories of vicarious liability or contributory infringement, these are separate claims from a claim of copyright infringement, <u>see</u> <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1019, 1022-23 (9th Cir. 2001), and Righthaven has not articulated either one in its Complaint.

18

residency, as evidenced by the summons it issued to Newman's residence in the United Kingdom.  (See Doc. # 3.)


### a.      General Personal Jurisdiction

General jurisdiction exists when a Defendant's contacts with the forum state are "substantial" and "continuous and systematic."  Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  The burden on Plaintiff in establishing general jurisdiction is "fairly high," and requires that the defendant's contacts be of the sort that approximate physical presence.  Id.  Factors considered in determining general jurisdiction include whether the defendant is incorporated in the forum, whether he solicits business there, holds a license, or designates an agent for service of process.  See id.

Here, on the Complaint that Righthaven has filed, general jurisdiction is not a credible basis for establishing personal jurisdiction over Newman.  The Complaint doesn't contain a single allegation of "substantial," or "continuous and systematic" contacts between Newman and Nevada.  Newman's Declaration bolsters the conclusion that general personal jurisdiction is lacking, in that he testifies he has never conducted or solicited business in Nevada, and that he never even traveled to Nevada.


### b.      Specific Personal Jurisdiction

Where there is no general jurisdiction, a Court may exercise specific jurisdiction over a foreign defendant if his or her substantial contacts with the forum give rise to the cause of action before the Court.  See id. at 1086.  The Ninth Circuit applies a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process:

19

(1)  The non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2)  The claim must be one which arises out of or results from the defendant's forum-related activities.

(3)  Exercise of jurisdiction must be reasonable.

Doe 248 F.3d at 923 (citations omitted).  Of these three elements, the first prong, purposeful availment, "is the most critical."  Cybersell, 130 F.3d at 416.

Before a defendant may be sued in a forum, the defendant must "purposefully avail" itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and quotations omitted).  This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person."  Id.

Purposeful availment requires "affirmative conduct," that is, a deliberate effort by the defendant to direct its activities toward and to make contact with, the forum.  See Unocal, 248 F.3d at 924.  In the present case, Righthaven cannot demonstrate that Newman has purposely availed himself of the benefits of the laws of Nevada.  He has taken no affirmative conduct to direct his activities into the forum.  He does not even own or operate the website.  Newman Decl. at ¶ 4.  Given this fact, no further analysis is needed on the issue of personal jurisdiction.

If the Court disagrees and wishes to further analyze personal jurisdiction, it will have to pierce the corporate veil to find Newman liable for activities of the Company, which owns and operates the Website.  In conducting such analysis, the Court should examine the seminal case of whether the operation of a website from outside the forum can constitute "purposeful availment"

20

is <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997) (discussed in <u>Cybersell</u>, 130 F.3d at 418).  There, the court concluded that purposeful availment should be evaluated based on a "sliding scale" of interactivity:  the more interactive the website and the more the defendant directs the activities of the website toward the forum state, the more likely it is that the defendant has purposefully availed itself of doing business in the relevant forum.  <u>Id.</u> at 1124.

In the present case, the Website appears to be on the low end of interactivity.  The Complaint indicates that third parties may post content to the site, but not that items are for sale on the site.  The website merely provides a forum for independent third parties to post topics and issues of interest to them, but neither Newman nor the Company exercises control or direction over these third parties.  Newman Decl. at ¶ 10.

In the Ninth Circuit, purposeful availment in tort cases often is analyzed under the effects test from <u>Calder v. Jones</u>, 465 U.S. 783 (1984):

> As we have previously recognized, <u>Calder</u> stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  Based on these interpretations of <u>Calder</u>, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

<u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).

"Express aiming" requires "something more."  <u>See</u> <u>Bancroft & Masters</u>, 223 F.3d at 1087.  It requires the defendant to "individually target [] a known forum resident."  <u>Id.</u>  The presence of "individualized targeting" is what is required to satisfy the effects test.  <u>See</u> <u>id.</u> at 1088.  As the Ninth Circuit noted in <u>Bancroft & Masters</u>, the Plaintiff could not satisfy that factor in <u>Cybersell</u> where "there was no showing that the defendants even knew of the existence

21

of the plaintiffs, let alone targeted them individually." Id. at 1088 (citing Cybersell, 130 F.3d at 420).

The Calder "effects test" does not apply with the same force to corporate plaintiffs as it does to individual plaintiffs, since a corporation "does not suffer harm in a particular geographic location in the same sense that an individual does." Cybersell, 130 F.3d at 420 (concluding that defendant's web page was not aimed intentionally at the forum state knowing that harm was likely to be caused in the forum to the plaintiff).

Here the three elements under Calder weigh against the exercise of personal jurisdiction. First, the law does not presume that copyright infringement is intentional; to the contrary, the Copyright Act allows for both enhanced damages for willful infringement, and reductions of statutory damages for innocent infringement. See 17 U.S.C. § 504(c)(2). Here third parties post material without direction or control from Newman, the Company or its other officers or directors. Newman Decl. at ¶ 10. Rebutting the argument that the infringement was intentional, Newman disabled the post as soon as he was alerted to allegations of infringement. Id. at ¶ 12. Righthaven never sent a cease & desist letter, id. at ¶ 11; had it done so, Newman would have removed the thread to the post even sooner. Id. These facts show the opposite of intentional infringement.

Second, it is unreasonable to conclude that Newman's actions were expressly aimed at Righthaven, let alone any other residents of Nevada. As a corporation, Righthaven is not entitled to the same entitlements under Calder because it is presumed that a corporation "does not suffer harm in a particular geographic location in the same sense that an individual does." See Cybersell, 130 F.3d at 420. Righthaven's primary argument, impliedly, is that Newman, through his connections with facepunch.com, has specifically intended interaction with residents of every

22

state in that facepunch.com can receive customers from anywhere in the country.  However, simply maintaining a website available to residents in the forum state is not purposeful availment.  See Cybersell 130 F.3d at 418 (discussing Bensusan Restaurant Corp. v. King, 937 F. Supp. 295, 301(S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997)).  Newman had never heard of Righthaven or the *Las Vegas Review-Journal* prior to receiving notice of the instant Complaint.  Newman Decl. at ¶ 15.

Third, and contrary to Righthaven's conclusory allegations in paragraphs 13 and 14 of the Complaint,[13] Newman did not cause harm knowing it is likely to be suffered in Nevada.  In a factually similar case, the Third Circuit found personal jurisdiction over the defendants was lacking where no evidence existed that they had "expressly aimed their allegedly tortious activity at Pennsylvania knowing that harm was likely to be caused there."  See Remick v. Manfredy, 238 F.3d 248, 259 (3rd Cir. 2001).  "Given that the website was . . . accessible worldwide, there is no basis to conclude that the defendants expressly aimed their tortious activity at Pennsylvania knowing that harm was likely to be caused there."  Id. at 259.  Any resulting harm to the plaintiff was found to be "merely incidental."  Id.

Like the defendants in Remick, Newman did not "expressly aim" any tortious activities into Nevada.  Setting aside the fact that he does not own or operate the website in his individual capacity, it is accessible worldwide and its readership is not focused on or limited to any particular geographic region.  Newman Decl. at ¶ 16.  Newman disagrees with Righthaven's conclusory allegation that reproduction of the Work on facepunch.com was of specific interest to

---

[13] Paragraph 13 of the Complaint alleges: "At all times relevant to this lawsuit, Mr. Newman knew that the Infringement was and is of specific interest to Nevada residents."  Paragraph 14 of the Complaint alleges: "Mr. Newman's display of the Infringement was and is purposefully directed at Nevada residents."  (Doc. 1).

23

Nevada residents.  Id.  To the contrary, his experience has been that interest in facepunch.com is based on visitors' identity as a gamer, regardless of their residency.  Id.

Righthaven has alleged nothing to indicate that Newman has taken any specific, deliberate steps to establish a substantial connection with Nevada.  There is no indication in the Complaint that Newman has conducted business in Nevada, had any employees or agents in Nevada, or had legitimate Nevada customers.  Indeed, the record establishes that Newman's only contacts with Nevada are "random" or "attenuated," both of which are insufficient to establish purposeful availment and personal jurisdiction.  See Burger King, 471 U.S. at 475.  Thus, Righthaven cannot establish that Newman purposefully availed himself of the privilege of conducting activities in Nevada, thus invoking the benefits and protections of its laws.  See eg., id.

If the Court disagrees and finds purposeful availment by Newman, then the exercise of jurisdiction over Newman would be unreasonable.  For jurisdiction to be reasonable, it must comport with fair play and substantial justice.  See id. at 476.  The burden of demonstrating unreasonableness rests with the defendant, and the defendant must show a "compelling case." Id. at 476 – 77.  Seven factors should be weighed in evaluating the reasonableness of exercising personal jurisdiction in a given case:

> (1)  the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest and convenient and effective relief; and (7) the existence of an alternative forum.

Bancroft & Masters, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476-77).

Analyzing the above factors, the extent of Newman's purposeful interjection into the forum state's affairs was minimal.  The Complaint alleges only a single incidence.  "The smaller

24

the element of purposeful interjection, the less the jurisdiction to be anticipated and the less reasonable is its exercise."  <u>Core-Vent Corp. v. Nobel Invest. AB</u>, 11 F.3d 1482, 1488 (9th Cir. 1993) (citations omitted).  Accordingly, this factor weighs against personal jurisdiction.

The second factor of reasonableness, the burden on defendants, weighs strongly against jurisdiction.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  <u>Asahi Metal Industry Co. v. Superior Court</u>, 480 U.S. 102, 114 (1987).  The use of an agent in the United States might alleviate a foreign defendant's burden, <u>see Core-Vent</u> 11 F.3d at 1488, but Newman does not have such an agent. Newman Decl. at ¶ 14.  Further, he has testified under oath that he has never travelled to Nevada. <u>Id.</u> at ¶ 3.  Newman has also testified that defending this action in Nevada would be unduly burdensome and expensive for him.  <u>Id.</u> at ¶ 18.  Thus, this factor weighs strongly against personal jurisdiction over Newman.

Regarding the third factor, "litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."  <u>Sinatra v. National Enquirer</u>, 854 F.2d 1191, 1199 (9th Cir. 1988). The Court should presume that Great Britain has a sovereign interest in adjudicating the claim against a British individual resident.  <u>Doe v. Geller</u>, F. 33 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) (citing <u>Harris Rutsky and Co. Ins. Serv., Inc. v. Bell and Clements Ltd.</u>, 328 F.3d 1122, 1133 (9th Cir. 2003)).  Further, the website forum that is at the heart of this dispute is controlled from England.  Newman Decl. at ¶ 7.  Accordingly, this factor weighs strongly against the reasonableness of exercising jurisdiction over Newman.

25

The fourth factor, the forum state's interest in adjudicating the dispute, weighs against the reasonableness of exercising jurisdiction over Newman.  Although Righthaven is the party plaintiff, the Agreement that it has with Stephen's Media, LLC indicates that Stephen's Media is the true owner of the underlying copyrights.  Thus, Righthaven does not have standing.  Further, Nevada "is not the worldwide regulator of free speech in the digital age."  Geller, 533 F. Supp. 2d at 1008.  As discussed above, the Copyright Act was not intended by Congress to be applied extraterritorially.  Omega S.A. v. Costco Wholesale Corp., 541 F.3d 982, 987 (9th Cir. 2008).  The District of Nevada "is not an international court of internet law."  Geller, 533 F. Supp. 2d at 1009.  Accordingly, this factor weighs against jurisdiction.

The fifth factor, the most efficient judicial resolution of the controversy, weighs against jurisdiction.  This factor requires the Court to evaluate where the witnesses and evidence are likely to be located.  See Core-Vent, 11 F.3d at 1489.  Given that the website is owned by a British company, whose sole offices are located in England, the witnesses and evidence are likely to be located in England.

The sixth factor, the importance of the forum to the plaintiff's interest in convenient and effective relief, weighs against jurisdiction in Nevada.  Righthaven has not shown that the claim cannot be effectively remedied in England.  See Geller, 533 F. Supp. 2d at 1010 (quoting Sinatra, 854 F. 2d at 1200).  Further, Righthaven fails to articulate any concerns that paint Nevada as "important" to its claim.  Id.

Finally, the seventh factor, the existence of an alternative forum, also weighs against jurisdiction over Newman.  "The plaintiff bears the burden of proving the unavailability of an alternative forum."  Core-Vent, 11 F.3d at 1490.  Righthaven has made no such showing that it

26

1
2

would be precluded from suing in England.  Righthaven's *preference* of venues "is not the test."

Geller (quoting Roth v. Garcia Marquez, 942 F. 2d 617, 625 (9th Cir. 1991)).

3
4
5
6
7
8
9

Just as in Geller, the balance of the above factors weighs against jurisdiction over Newman.  There, the court found that it would be "unreasonable and unfair" to assert jurisdiction over British residents in a suit over an allegedly tortious facts sent to a third party in California.  "Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff in the forum State, the exercise and personal jurisdiction . . . in this instance would be unreasonable and unfair."  Asahi, 480 U.S. at 116.

10
11
12

For all of the above reasons, the Court should find it unreasonable to exercise personal jurisdiction over Newman, even if it finds purposeful availment, which the facts dictate against.

13
14

**IV.   CONCLUSION**

15
16
17
18
19
20
21

For all of the above reasons, the Complaint against Newman should be dismissed for lack of both subject matter jurisdiction and personal jurisdiction.   Subject matter jurisdiction is lacking because Righthaven has no standing, as Stephens Media transferred to Righthaven only the right to sue for infringement, but none of the underlying copyrights enumerated in Section 106 of the Copyright Act.  Further, the Copyright Act may not be applied to infringement that occurs outside the borders of the United States, and here the infringement occurred in England.

22
23
24
25
26
27
28

Similarly, personal jurisdiction is lacking over Newman because he does not own the Website; a British Limited Company does, providing Newman with a shield against personal liability.  Further, it would violate "traditional notions of fair play and substantial justice" to force Newman to defend a lawsuit in Nevada.  Newman is a resident of England who has never been in Nevada, nor conducted or solicited business there.  Righthaven cannot demonstrate that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Newman purposely availed himself of the benefits of the laws of Nevada, or that the effects of the alleged infringement were targeted into or felt specifically in Nevada.   Accordingly, this Complaint should be dismissed with prejudice.

Righthaven's motivation in filing suit against Newman is suspect.  As Judge Hunt found in dismissing Righthaven's Complaint against Democratic Underground, Righthaven's only right under the SAA is to "bring and profit from copyright infringement actions."  Democratic Underground, 2011 WL 2378186, at *2.   It possesses none of the rights provided in Section 106 of the Copyright Act.

Righthaven cannot claim with a straight face that it has been harmed.   Righthaven acknowledges that the Website attributed *Las Vegas Review*-Journal as the original source of the Article for the entire time in which the Article appeared on the Website.  See Doc. 1 at ¶ 10. Further, Newman immediately disabled the thread to the post on the Website as soon as he learned of the Complaint, (Newman Decl. at ¶ 12), thus satisfying that portion of Righthaven's prayer for relief seeking that the reproduction be removed.  See Compl., at Prayer for Relief.

For all the reasons stated above, Righthaven's Complaint against Newman must be dismissed.  But even if Righthaven were deemed the prevailing party, it would not be entitled to recover either statutory damages or attorneys' fees against Newman, since copyright registration for the Article was not obtained until after the alleged infringement.  See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 700-01 (9th Cir. 2008) (noting that statutory damages and attorneys' fees are available only where registration is obtained prior to infringement commencing).  The Complaint alleges that the infringement commenced on September 25, 2010, (Doc. 1 at ¶ 9), but registration for the copyright was not secured until October 6, 2010.  See **Ex. A** hereto (copy of records obtained from Copyright Office webpage).  Even if Righthaven could

28

1    surmount the challenges of subject matter and personal jurisdiction, which it cannot, it would be

2    entitled to very little other possible relief.   Thus, these facts indicate that Righthaven's true

3    motivation is to target and extract settlements from specific defendants, like Newman, who will

4    have difficulty defending against litigation (because of cost or distance or, in this case, both).

5            DATED this 28th day of June, 2011.

6

7                                        BONE McALLESTER NORTON PLLC
8                                        By: /s/ Stephen J. Zralek
                                         Stephen J. Zralek, *Admitted pro hac vice*
9                                        511 Union Street, Suite 1600
10                                       Nashville, TN 37212
                                         szralek@bonelaw.com
11                                       (615) 238-6305

12                                       BROWNSTEIN HYATT FARBER SCHRECK LLP
13                                       Kirk B. Lenhard, Nevada Bar No. 1437
                                         Anthony J. DiRaimondo, Nevada Bar No. 10875
14                                       100 N. City Parkway, Suite 1600
15                                       Las Vegas, NV 89106
                                         klenhard@bhfs.com
16                                       adiraimondo@bhfs.com
                                         (702) 382-2101
17
18                                       Attorneys for Defendant
                                         GARRY NEWMAN
19

20
                                   **CERTIFICATE OF SERVICE**
21

22           I certify that I served a copy of the foregoing document on the following counsel of

23    record via the Court's CM/ECF system this 28th day of June, 2011:

24           Shawn A. Mangano, Esq.
25           SHAWN A. MANGANO, LTD.
             9960 West Cheyenne Ave., Suite 170
26           Las Vegas, NV 89129-7701
             *Attorney for Plaintiff*
27           *Righthaven, LLC*
28                                               /s/ Stephen J. Zralek

                                          29