BROWNSTEIN HYATT FARBER SCHRECK, LLP
KIRK B. LENHARD (Nevada Bar No. 1437)
ANTHONY J. DIRAIMONDO (Nevada Bar No. 10875)
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:  (702) 382-2101 // Facsimile:  (702) 382-8135
Email:  klenhard@bhfs.com
Email:  adiraimondo@bhfs.com

BONE McALLESTER NORTON PLLC
STEPHEN J. ZRALEK (*Admitted pro hac vice*)
Nashville City Center
511 Union Street, Suite 1600
Nashville, Tennessee 37219
Telephone:  (615) 238-6305 // Facsimile:  (615) 687-2763
Email:  szralek@bonelaw.com

Attorneys for Defendant
GARRY NEWMAN

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>GARRY NEWMAN, an individual; and<br>FACEPUNCH STUDIOS LTD., a limited<br>company formed under the laws of Great<br>Britain,<br><br>        Defendants. | Case No.:  2:10-cv-01762-JCM -PAL<br><br>**DEFENDANT GARRY NEWMAN'S**<br>**MOTION TO DISMISS THE FIRST**<br>**AMENDED COMPLAINT FOR LACK OF**<br>**SUBJECT MATTER JURISDICTION**<br>**AND LACK OF PERSONAL**<br>**JURISDICTION** |

On June 28, 2011, Defendant Garry Newman ("Newman") filed a Motion to Dismiss the

Original Complaint filed by Plaintiff Righthaven, LLC ("Righthaven").  (Doc. 19).  Righthaven's

deadline to respond to the Motion to Dismiss was July 15, 2011.  Despite such deadline,

Righthaven did not respond.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

On July 16, 2011, without seeking leave of Court, Righthaven filed an improperly labeled "Amended Complaint," asserting that it was being filed as of right pursuant to Fed. R. Civ. P. 15(a).  See Doc. 21.  In the Amended Complaint, Righthaven sets forth a new "transaction, occurrence, or event that happened after the date" of the Original Complaint – namely the execution of a second amendment to the Strategic Alliance Agreement ("SAA") between Righthaven and Stephens Media, which it refers to as the "Restated Amendment."  See Doc. 21 at ¶ 21.  Because the Amended Complaint is based largely on facts that occurred after the filing of the Original Complaint, Rule 15 requires Righthaven to have sought permission to file a supplemental pleading and to have provided notice to Newman, pursuant to Fed. R. Civ. P. 15(d).  Righthaven sought no such permission and provided no such notice.  Righthaven's 21-day window to file an amended complaint as of right, pursuant to Rule 15(a)(1)(B), has expired.  This ground alone is sufficient for dismissal.

On July 22, 2011, the Court entered an Order granting the Motion to Dismiss without prejudice, finding that Righthaven failed to respond to the Motion to Dismiss.  (Doc. 22).  Newman now files the present Motion to Dismiss the Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.

As set forth in the following Memorandum of Points and Authorities, and as supported by the Declaration of Newman (Doc. 20), the Amended Complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) for two reasons.  First, as this Court has already found in related cases, Righthaven lacks standing to bring this case.  Even if the Restated Agreement provided Righthaven with standing (which Newman cannot ascertain since Righthaven has not filed a copy of the Restated Agreement with the Amended Complaint or otherwise provided a copy to Newman), the Amended Complaint did not affect the second basis for lack of subject matter jurisdiction: the Copyright Act does not apply extraterritorially, and the alleged infringement in this case occurred in Great Britain.

Further, nothing in the Amended Complaint changes the fact that, under Rule 12(b)(2), the Court also lacks personal jurisdiction over Newman for two reasons: (a) he does not own or control the allegedly infringing website; rather, a limited company organized under the laws of

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1  Great Britain does, and (b) he is a resident of Great Britain, who has not purposefully availed

2  himself of the rights and privileges of the State of Nevada, and jurisdiction over him would be

3  manifestly unreasonable.

4        DATED this 1st day of August, 2011.

5                                    BROWNSTEIN HYATT FARBER SCHRECK LLP

6

7  By: /s/ Anthony J. DiRaimondo
   Kirk B. Lenhard, Nevada Bar No. 1437
8  Anthony J. DiRaimondo, Nevada Bar No. 10875
   100 N. City Parkway, Suite 1600
9  Las Vegas, NV 89106
   klenhard@bhfs.com
10 adiraimondo@bhfs.com
   (702) 382-2101
11

12 BONE McALLESTER NORTON PLLC

13 By: /s/ Stephen J. Zralek
   Stephen J. Zralek, *Admitted pro hac vice*
14 511 Union Street, Suite 1600
   Nashville, TN 37212
15 szralek@bonelaw.com
   (615) 238-6305
16
   Attorneys for Defendant
17 GARRY NEWMAN

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL BACKGROUND

This is a copyright infringement action brought by Plaintiff Righthaven, LLC ("Righthaven") against Defendant Garry Newman ("Newman").[1]   Newman is a citizen and resident of Great Britain.  See Doc. 21 at ¶ 4; Decl. of Garry Newman (Doc. 20) at ¶ 2.[2]  He was born in England and has resided there his entire life.  Doc. 20 at ¶ 2.  He has never been to Nevada, and has never conducted or solicited business there.  Id. at ¶¶ 3, 13-14.

Righthaven alleges that it owns the copyright in a newspaper article entitled: "'Death ray' scorched hair," (the "Article"), attached to the Amended Complaint as Exhibit 1.  (Doc. 21 at ¶ 16).  The Article describes an architectural curiosity: a "concave reflective surface" on the outside wall of a skyscraper – the Vdara Hotel at CityCenter on the Strip in Las Vegas – that directs the sun's rays toward guests at the hotel's swimming pool, melting their plastic cups and shopping bags, and singeing their hair.  See Doc. 1 at Ex. 1.  The phenomenon is so powerful, apparently, that it has earned the nickname "Vdara death ray."  Id.

The Amended Complaint alleges that Newman is the registrant and administrative contact for the website facepunch.com (the "Website").  Doc. 21 at ¶ 8.  It also alleges that Newman allowed the Article to be reproduced on the Website (copy of Article allegedly appearing on Website in Exhibit 2 to the Original Complaint, Doc. 1), in violation of the copyrights owned by Righthaven.  Doc. 21 at ¶ 20.

Although Newman concedes he is the individual listed at the domain registrar as the contact for the Website, he does not personally own the Website or control it in his individual

---

[1] In its First Amended Complaint, Righthaven has added as a defendant Facepunch Studios Ltd., ("Facepunch"), a limited company formed under the laws of Great Britain.  Righthaven has not served process on Facepunch, and this Motion to Dismiss is filed solely on behalf of Newman. Without entering an appearance on behalf of Facepunch, undersigned counsel notes that it appears the Court also lacks personal jurisdiction and subject matter jurisdiction over Facepunch, on many of the same grounds it lacks jurisdiction over Newman and this complaint against him.

[2] The Court may examine extrinsic evidence without converting the motion to dismiss into a motion for summary judgment when determining subject matter jurisdiction, see Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), or personal jurisdiction.  See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

capacity.  Doc. 20 at ¶ 4.  Rather, the Website is owned by Facepunch Studios Ltd., which is registered as a Limited Company in the United Kingdom, organized under the laws of Great Britain.  Id.  A certified copy of the Certificate of Incorporation of Facepunch Studios Ltd. (the "Company") is attached to Newman's Declaration as Exhibit A.   Newman merely has an ownership interest in the Company and is one of two directors of the Company.  Id. at ¶ 5.  The Company has no employees.  Id.

The Website serves as a forum for online game users and enthusiasts.  Id. at ¶ 6.  It provides a place for gamers to share their thoughts on various issues and topics.  Id.  The Website has always been controlled out of the Company's offices in England, and the Company has no other offices.  Id. at ¶ 7.

Exhibit 2 to the Original Complaint shows that the user who posted the alleged unauthorized reproduction uses the name "Wii60."  Doc. 20 at ¶ 9; Doc. 1-1 at Ex. 2.  The user name "Wii60" does not belong to Newman.  Id.  Further, Newman has never used "Wii60" to post content on the Website.  Id.  Newman does not direct or create content that third parties, such as Wii60, post on the Website.  Id. at ¶ 10.

On October 12, 2010, Righthaven filed its Original Complaint against Newman.  Doc. 1. Prior to filing the Original Complaint, Righthaven never sent a cease & desist letter requesting removal of the alleged unauthorized reproduction.  Newman Decl. at ¶ 11.  Immediately upon learning of Righthaven's allegations, Newman, acting in his corporate capacity with the Company, disabled the thread to the posting that is referenced in Exhibit 2 of the Original Complaint.  Id. at ¶ 12.  He did this from the Company's offices in England on November 4, 2010.  Id.

Newman has never been to Nevada or conducted business there.  Id. at ¶¶ 3, 13.  He has never solicited business in Nevada; designated an agent for service of process in Nevada; held a license in Nevada; incorporated in Nevada; paid taxes in Nevada; or had a bank account in Nevada.  Id. at ¶¶ 3, 14.  Moreover, none of the servers supporting the Website are located in Nevada.  Id. at ¶ 17.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

Prior to receiving notice of the Original Complaint, Newman had never heard of Righthaven or *The Las Vegas Review – Journal*. Id. at ¶ 15. As the Website's readership is worldwide and not focused on or limited to any particular geographic region, Newman disagrees with Righthaven's contention that reproduction of the Article on the Website was of specific interest to Nevada residents. Id. at ¶ 16. To the contrary, his experience has been that interest in the Website is based on visitors' identity as a gamer, regardless of their residency. Id.

Given that Newman is a British citizen residing in England, defending this lawsuit in Nevada would be extremely burdensome for him. Id. at ¶ 18. He has limited funds and cannot afford to travel to Nevada for the multiple hearings and depositions that would be required. Id. Participating by telephone would put Newman at a disadvantage to Plaintiff. Id. Having to defend this lawsuit in Nevada would result in a substantial hardship for him. Id.

## This Court has found Righthaven Lacks Standing in Related Cases

Righthaven's claims of copyright ownership in the Article have been rejected by this Court in related cases. As background, the Copyright Office records indicate that Stephens Media, LLC ("Stephens Media") is the author of the Article. (Copy of copyright registration information obtained from Copyright Office webpage attached hereto as **Exhibit A**.)[3] Righthaven is listed therein as the copyright claimant, by virtue of a written assignment.[4] Id. Righthaven did not attach to the Original or Amended Complaint a copy of the specific assignment giving it putative rights in the Article.

---

[3] Pursuant to Fed. R. Evi. 201(d), the Court is requested to take judicial notice of facts obtained from Righthaven's putative copyright registration of the Article, as obtained from the Copyright Office website. The Court may take judicial notice because this is a matter "of public record" and "readily verifiable." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Certificate of Registration also appears at Doc. 1-1, Ex. 4.

[4] Righthaven would have no contractual right to bring the present suit without such assignment, and the records from the Copyright Office (attached hereto as **Exhibit A**) indicate that Stephens Media assigned certain putative rights to Righthaven. In response to Newman's argument that Righthaven lacks standing, it is presumed that Righthaven will need to produce a copy of the SAA, any amendments thereto, and any specific assignment purporting to transfer rights in the Article from Stephens Media to Righthaven.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1    In recent months, this Court has dismissed multiple complaints filed by Righthaven for

2  lack of standing.[5]  When pressed about its alleged ownership in these related cases, Righthaven

3  has pointed to several documents showing an alleged assignment of rights from Stephens Media

4  to Righthaven.  After examining the primary agreement – the "Strategic Alliance Agreement" or

5  "SAA")[6] – that Righthaven filed in its case against Democratic Underground, this Court held that

6  Righthaven does not actually own any of the *underlying copyrights* belonging to Stephens Media,

7  but merely owns the *right to sue* for infringement of Stephens Media's copyrights.[7]  Righthaven

8  LLC v. Democratic Underground, LLC, __ F. Supp. 2d __, 2011 WL 2378186, at *3 (D. Nev.

9  June 14, 2011) (slip copy) (copy attached hereto as **Exhibit D**).  Pointing to Section 7.2 of the

10  SAA, the Court found that the only right that Righthaven is granted under the SAA is "the bare

11  right to bring and profit from copyright infringement actions."  Id. at *2.  Finding that "the SAA

12  prevents Righthaven from obtaining any of the exclusive rights necessary to maintain standing in

---

[5] Pursuant to Fed. R. Evi. 201(d), the Court is requested to take judicial notice of this fact and all facts contained within the declarations Righthaven has previously filed with the District of Nevada in similar cases, and the exhibits thereto.  The Court may take judicial notice because these facts are a matter "of public record" and "readily verifiable."  Reyn's, 442 F.3d at 746 n.6.

[6] Righthaven LLC v. Democratic Underground LLC, No. 2:10-cv-01356-RLH-GWF, at Ex. 1 to Doc. 79 thereto (D. Nev. Mar. 9, 2011) (copy of SAA dated Jan. 18, 2010, attached hereto as **Exhibit B**).  A duplicate copy of the SAA was filed in Righthaven LLC v. Hoehn, and was authenticated by the Declaration of the CEO of Stephens Media, Steven Gibson.  See No. 2:11-cv-00050-PMP-RJJ, at Ex. 2 to Doc. 24 thereto (D. Nev. May 9, 2011) (attached hereto as **Exhibit E**).  Although cases generally should not be attached to filings, many of these cases have not yet been published or are very recent decisions, thus Newman attaches them here for the Court's convenience.

[7] In that case, Democratic Underground moved to unseal the SAA.  In granting that motion, this Court stated: "As I have . . . considered the multitude of cases filed by Righthaven, on the claimed basis that Righthaven owns the copyrights to certain Stephens Media copy, it appears to the Court that there is certainly an interest and even a right in all the other defendants sued by Plaintiff to have access to this material."  Democratic Underground, No. 2:10-cv-01356-RLH-GWF, at p. 4 of Doc. 93 thereto (Apr. 14, 2011) (Order Unsealing SAA) (copy attached hereto as **Exhibit C**).

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1   a copyright infringement action," the Court dismissed Righthaven for lack of standing.[8]  Id. at *6.

2   "As such, Righthaven's complaint is dismissed in its entirety."  Id. at *9.

3          On May 9, 2011, Righthaven amended the SAA.  While not providing a copy to Newman

4   or filing a copy of the amendment in this case, Righthaven did file a copy in its lawsuit against

5   defendant Wayne Hoehn.[9]  Despite the amendment, this Court held that Righthaven still lacked

6   standing since the amendment continued to deprive Righthaven of ownership over Stephens

7   Media's copyrights.  Righthaven LLC v. Hoehn, ___ F. Supp. 2d ___, 2011 WL 2441020 (D.

8   Nev. June 20, 2011) (slip copy) (copy attached hereto as **Exhibit F**).

9          On July 13, 2011, this Court granted a similarly situated defendant's motion to dismiss on

10  grounds that Righthaven lacked standing.  See Righthaven LLC v. Mostofi, Case Number 2:10-

11  cv-1066-KJD-GWF, 2011 WL 2746315 (D. Nev. July 13, 2011) (slip copy) (copy attached hereto

12  as **Exhibit G**).  There, Righthaven argued that the amendment it executed with Stephens Media

13  on May 9, 2011 fixed any possible errors in the original SAA that would have prevented

14  Righthaven from having standing in that matter.  Id. at * 3.  The court disagreed, finding that the

15  amendment could not create standing because "[t]he existence of federal jurisdiction ordinarily

16  depends on the facts *as they exist when the complaint was filed*."  Id.  (quoting Lujan v. Defenders

17  of Wildlife, 504 U.S. 555, 571 n.4 (1992) (emphasis in Lujan)).

18         After that, and after Newman moved to dismiss the Original Complaint on June 18, 2011

19  (Doc. 19), Righthaven amended the SAA for a *second time* on July 8, 2011.  (Doc. 21 at ¶ 21).

20  Righthaven refers to this second amendment as the "Amended and Restated Strategic Alliance

21  Agreement," or the "Restated Amendment."  Id.  Righthaven again failed to attach a copy of the

22  Restated Amendment to its Amended Complaint or otherwise provide a copy to Newman.

23  Because Newman is without a copy of the Restated Agreement, and because it is assumed

24  _____

25  [8] Although not controlling, these decisions are highly persuasive, given the similarity of facts in
    all Righthaven cases.

26  [9] Hoehn, No. 2:11-cv-00050-PMP-RJJ, at Ex. 3 to Doc. 24 thereto (D. Nev. May 9, 2011)

27  (Gibson Decl., attaching Clarification and Amendment to SAA) (copy attached hereto as **Exhibit
    E**).

28

1   Righthaven will rely on its contents and attach a copy of it when it responds to this Motion,
2   Newman reserves the right to address its merits when he files his reply brief.

3       Separately, when Righthaven filed its original Certificate of Interested Parties in October
4   2010, (Doc. 5), it failed to disclose to this Court and to Newman the "direct, pecuniary interest"
5   that Stephens Media has in the outcome of this case.  Instead, it listed only three parties, none of
6   which was Stephens Media.  Id.  In Democratic Underground, the Court stated that it "believes
7   that Righthaven has made multiple inaccurate and likely dishonest statements to the Court."  2011
8   WL 2378186, at *9.  Choosing to focus, however, on what it described as "the most factually
9   brazen," the Court reprimanded Righthaven for failing to disclose Stephens Media as an
10  interested party in Righthaven's Certificate of Interested Parties.  Id.  Only after being ordered to
11  do so did Righthaven finally file an Amended Certificate of Interested Parties in the instant case,
12  listing Stephens Media as an interested party, on June 20, 2011.  (Doc. 17).

13  **II.    LEGAL STANDARD**

14  **A.    Subject Matter Jurisdiction**

15      The plaintiff has the burden of establishing subject matter jurisdiction.  Pesci v. I.R.S., 67
16  F. Supp. 2d 1189, 1194 (D. Nev. 1999).  Subject matter jurisdiction is an essential element to
17  every lawsuit and must be demonstrated "at the successive stages of the litigation."  Chapman v.
18  Pure One Imports (U.S.), Inc., 631 F.3d 939, 954 (9th Cir. 2011) (citing Lujan v. Defenders of
19  Wildlife, 504 U.S. 555, 561 (1992)).  Where subject matter jurisdiction is lacking, a court has no
20  discretion and must dismiss the case.  See Chapman, 631 F.3d at 954.

21      In evaluating a motion to dismiss under Rule 12(b)(1), the Court may consider extrinsic
22  evidence without converting the motion into one for summary judgment.  See Safe Air for
23  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Rule 12(b)(1) attacks on jurisdiction
24  can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting
25  the court to look beyond the complaint."  Savage v. Glendale Union High Sch., 343 F.3d 1036,
26  1052 n.2 (9th Cir. 2003) (citations omitted).  "Once the moving party has converted the motion to
27  dismiss into a factual motion by presenting affidavits or other evidence properly brought before
28  the court, the party opposing the motion must furnish affidavits or other evidence necessary to

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1   satisfy its burden of establishing subject matter jurisdiction." Id. (citations omitted).  "The court

2   need not presume the truthfulness of the plaintiff's allegations." Meyer, 373 F.3d at 1039.

3       A central component to subject matter jurisdiction is the question of standing, which

4   requires that the party experience actual or imminent harm. Lujan, 504 U.S. at 561.  A party's

5   standing to bring a case is not subject to waiver, and can be used to dismiss the instant action at

6   any time.  Fed. R. Civ. P. 12(h)(3); United States v. Hays, 515 U.S. 737, 742 (1995); Chapman,

7   631 F.3d at 954.  Within the realm of copyright law, 17 U.S.C. § 501(b) allows only the legal or

8   beneficial owner of an exclusive right in a copyright, specified in 17 U.SC. § 106, to sue for

9   infringement. Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 884 (9th Cir. 2005).

10  **B.      Personal Jurisdiction**

11      "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant."

12  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (citations omitted).  The court may

13  consider extrinsic evidence on a motion to dismiss for lack of personal jurisdiction without

14  converting the motion into one for summary judgment. See id.

15      Because this action raises a federal question, the issue of whether this Court may exercise

16  personal jurisdiction over a defendant depends on the specific limitations of Nevada's long-arm

17  statute and the constitutional principles of due process. Myers v. Bennett Law Offices, 238 F.3d

18  1068, 1072 (9th Cir. 2001).  In this case, the Amended Complaint comports to allege a cause of

19  action for copyright infringement against a British defendant.  Because the Copyright Act does

20  not provide for nationwide service of process, Nevada's law of personal jurisdiction applies.

21  Nevada's long-arm statute is co-extensive with the due process principles of the United States

22  Constitution. Myers, 238 F.3d at 1072 (citing Judas Priest v. Second Judicial Dist. Court, 104

23  Nev. 424, 760 P.2d 137, 138 (1988) (interpreting Nevada's long-arm statute to reach the limits of

24  federal due process)).  Thus, a non-resident party is only subject to personal jurisdiction in

25  Nevada if exercising jurisdiction comports with federal Constitutional due process requirements.

26  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1977).

27      Whether this Court, sitting in Nevada, has personal jurisdiction over Newman depends on

28  whether Righthaven has alleged sufficient "minimum contacts" between Newman and the State

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

of Nevada for purposes of general or specific jurisdiction, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

## III.   LEGAL ARGUMENT

### A.   The Court Lacks Subject Matter Jurisdiction over this Dispute

#### 1.   *Righthaven Lacks Standing*

"[O]nly copyright owners and exclusive licensees of copyright may enforce a copyright." Sybersound Records v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008).  Exclusive rights in a copyright are enumerated in 17 U.S.C. § 106 and include the exclusive rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> [and]
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

Id. at 1145 n.3.  "The right to sue for an accrued claim for infringement is not an exclusive right under § 106." Silvers, 402 F.3d at 884.  "Exclusive rights in a copyright may be transferred and owned separately, but . . . [there are] no exclusive rights other than those listed in §106." Id. at 885.  These exclusive rights may be transferred and owned separately, but the assignment of a bare right to sue is ineffectual because it is not one of the exclusive rights.  Id. at 884.  Since the right to sue is not one of the exclusive rights, transfer solely of the right to sue does not confer standing on the assignee.  Id. at 890.  One can only obtain a right to sue on a copyright if the party also obtains one of the exclusive rights in the copyright.  See id.

Righthaven has not provided Newman with a copy of the Restated Amendment to the SAA that it claims to have executed with Stephens Media on July 7, 2011.  Accordingly, Newman has no way of assessing Righthaven's standing based on that agreement.  Nevertheless, under Supreme Court precedent and this Court's ruling in Mostofi, Righthaven cannot create standing by pointing to the July 7, 2011 Restated Amendment because "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint was filed*."  Mostofi,

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

2011 WL 2746315 at *3.  Instead, the Court must examine the original SAA that was in place at the time Righthaven filed suit against Newman.  "Although a lower case court may allow parties to amend defective allegations of jurisdiction, it may not allow the parties to amend the facts themselves."  Id. (citing Newman-Green, Inc. v. AlfonzoLarrain, 498 U.S. 826, 830 (1989)).  In explaining this principle, the Court stated that a party may amend a complaint to correctly misstated domicile, but may not move to a new residence after filing the complaint in order to change his domicile.  Id.  That is exactly what Righthaven is attempting to do in the present case.

Thus, examining the SAA in its original form, Righthaven lacks standing to bring this lawsuit because it has *no* rights in the copyrights it claims, as demonstrated by the plain language of at least three sections of the SAA.[10]  E.g., Silvers, 408 F.3d at 884; Sybersound, 517 F.3d at 1144.

First, under Section 3.3 of the SAA, Righthaven is obligated to reassign the rights to the Work to Stephens Media if it does not pursue an infringement action within 60 days of the Assignment.  Id. at § 3.3.  Additionally, this section gives Stephens Media the right to direct Righthaven not to pursue an action against an alleged infringer.  Id.  In the end, Righthaven is left with no ownership of any exclusive copyright.

Second, Section 7.2 of the SAA states in pertinent part:

> Despite any such Copyright Assignment, *Stephens Media shall retain (and is hereby granted by Righthaven) an exclusive license to Exploit the Stephens Media Assigned Copyrights* for any lawful purpose whatsoever and *Righthaven shall have no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights other than the right to proceeds in association with a Recovery.* To the extent that Righthaven's maintenance of rights to pursue infringers of the Stephens Media Assigned Copyrights in any manner would be deemed to diminish Stephens Media's right to Exploit the Stephens Media Assigned Copyrights, Righthaven hereby grants an exclusive license to Stephens Media to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability to Exploit the Stephens Media Assigned Copyrights. Righthaven shall have no Obligation to protect or enforce any Work of Stephens Media that is not Stephens Media Assigned Copyrights.

---

[10] The SAA is referenced surpa at n.6, and attached hereto as **Exhibit B**.

See SAA at § 7.2, referenced supra in n.5, and attached hereto as **Exhibit B** (emphasis added). Under the plain language of Section 7.2, Righthaven's only right is to sue for infringement. Further, the SAA gives Stephens Media the unilateral right, at any time, to terminate the Copyright Assignment and enjoy a complete right of reversion. Id.

Third, under Section 8 of the SAA:

> *Stephens Media shall have the right at any time to terminate, in good faith, any Copyright Assignment (the "Assignment Termination") and enjoy a right of complete reversion to the ownership of any copyright that is subject of a Copyright Assignment . . . .* In order to effect termination of the [sic] any Copyright Assignment, Stephens Media shall be required to provide Righthaven with thirty (30) days prior written notice. Within thirty (30) days after receipt of termination of the [sic] any Copyright Assignment, Righthaven shall commence documentation to effect reassignment of the Stephens Media Assigned Copyrights to Stephens Media.

SAA at § 8 (emphasis added).

As this Court held in Righthaven, LLC v. Hoehn, these "carve outs deprive Righthaven of any of the rights normally associated with ownership of an exclusive right necessary to bring suit for copyright infringement and leave Righthaven no rights except to pursue infringement actions, a right which itself is subject to Stephens Media's veto."  Case No. 2:11-cv-00050-PMP-RJJ, Doc. 28 at p. 8 (D. Nev. June 20, 2011).  Finding that "the SAA prevents Righthaven from obtaining any of the exclusive rights necessary to maintain standing in a copyright infringement action," the Court dismissed Righthaven for lack of standing in Democratic Underground.  __ F. Supp. 2d ___, 2011 WL 2378186, at *6 (copy attached hereto as **Exhibit D**).

For all of the above reasons, Newman respectfully requests this Court to adopt the analysis and conclusion from both Hoehn and Democratic Underground, to find Righthaven lacks standing, and to dismiss the Amended Complaint for lack of subject matter jurisdiction.

### 2. *The Copyright Act does Not Apply Extraterritorially; Here the Alleged Infringement Occurred in England*

Even if the Court ultimately finds that Righthaven has sufficient standing, the Court still lacks subject matter jurisdiction over this particular dispute because United States copyright laws do not apply extraterritorially, and the alleged infringement in this case occurred in Great Britain.

13

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1  See Subafilms, Ltd. v. MGM-Pathe Comm's Co., 24 F.3d 1088, 1095-99 (9th Cir. 1994).

2  "Because the copyright laws do not apply extraterritorially, each of the rights conferred under the

3  five section 106 categories must be read as extending 'no farther than the [United States']

4  borders.'"  Subafilms, 24 F.3d at 1094.  For the Copyright Act to apply, "at least one alleged

5  infringement must be completed entirely within the United States."  Los Angeles News Serv. v.

6  Reuters Television Int'l, Ltd., 149 F.3d 987, 990-91 (9th Cir. 1988) (citations omitted).  The

7  Ninth Circuit has ruled, "[r]ecognizing the importance of avoiding international conflicts of law

8  in the area of intellectual property [] we have applied a more robust version of this presumption to

9  the Copyright Act, holding that the Act presumptively does not apply to conduct that occurs

10 abroad even when that conduct produces harmful effects within the United States."  Omega S.A.

11 v. Costco Wholesale Corp., 541 F.3d 982, 988 (9th Cir. 2008).

12  "In cases involving the posting of infringing material on an internet website [] courts have

13 held that the tort occurs where the website is created and/or maintained, usually where the server

14 supporting the website is located, not where the internet website can be seen, because that would

15 be literally anywhere the internet can be accessed."  Cable News Network, L.P. v. Go Sms.com,

16 Inc., No. 00-Civ-4812 (LMN), 2000 WL 1678039, at * 3 (S.D.N.Y. Nov. 6, 2000) (unpublished)

17 (copy attached as **Exhibit H**).

18     In the present case, the alleged infringement took place in England, where the website

19 facepunch.com is controlled.  See Newman Decl. at ¶ 7.  As soon as Newman learned of the

20 alleged infringement, while acting in his corporate capacity with Facepunch Studios Ltd., he

21 disabled the thread to the post – and he did so from the Company's offices in England.  Id. at ¶

22 12.  None of the servers supporting the website are located in Nevada.  Id. at ¶ 17.  Given the

23 robust presumption against the extraterritorial effect of the Copyright Act, this Court has no

24 jurisdiction over the subject matter of this dispute.  E.g., Omega, 541 F.3d at 988.

25     **B.     The Court Lacks Personal Jurisdiction over Garry Newman**

26     The Amended Complaint does not change the conclusion that the Court lacks personal

27 jurisdiction over Newman.   The Amended Complaint adds a count of vicarious copyright

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

infringement[11] against Newman, and adds facts in support of that claim.  Regardless of the new claim and newly asserted facts, the Amended Complaint still fails to assert that Newman's acts of infringement occurred in or were specifically targeted to Nevada.  Rather, Newman is shielded from claims of direct copyright infringement by virtue of the fact that Facepunch Studios Ltd. owns and controls the website where the infringement is alleged to have been published.  And he has insufficient contacts with Nevada to warrant either general or specific personal jurisdiction for either the direct copyright infringement claim or the vicarious copyright infringement claim.

### 1.   *A British Limited Company Owns the Website, Shielding Newman from Liability under British Law*

"Under English law, a corporation is a separate legal entity from its directors, officers, members, shareholders, or other controlling parties.  This principle was definitively established in the case of Salomon v. A. Salomon & Co., Ltd., [1897] A.C. 22 (H.L.)."  In re: Tyson, 433 B.R. 68 (S.D.N.Y. 2010).  Salomon[12] is a "landmark" opinion "that continues to be widely cited."  Id. at 79.  Under English law, the company is not an alias for its owners; rather, it is a distinct legal entity.  See id. at 80, n. 18 (citing Lord Herschell).

English law permits the corporate veil to be pierced "only in extremely limited circumstances."  Id. at 80.  Indeed, "veil piercing is quite rare under English law."  Id. at 86.  In Tyson, the federal district court reversed the bankruptcy court on the finding that English law permitted corporate veil piercing to hold British defendants liable for the corporation's obligations.  The Tyson Court explained that U.S. courts have previously noted that "[u]nlike American law, English case law does not provide an enumerated set of factors that a court can evaluate in deciding whether to lift the corporate veil."  Id. at 81 (citations and quotations omitted).  The Tyson Court thereafter surveyed English law and reached the following conclusions, all describing the difficulty of piercing the corporate veil in Britain:

---

[11] Vicarious copyright infringement requires a showing of three elements: (1) direct infringement by a third party; (2) the right and ability to supervise the infringing activity; and (3) direct financial benefit. appropriate. See 6 William F. Patry, Patry on Copyright § 21:66 (2011) (copy attached hereto as **Exhibit I**).

[12] A copy of the Salomon decision attached hereto as **Exhibit J**.

1

2

3

4

5

6

7

8

9

> First, given <u>Salomon</u>, the fact that a person engages in the "carrying on of a business" using a duly incorporated, yet seemingly artificial, entity is not sufficient to justify piercing that entity's veil. . . .   Second, courts may "pierce the corporate veil only where special circumstances exist indicating that [it] is a mere façade concealing the true facts." . . .   Third, . . . the plaintiff's ability to recover from the defendant on a veil-piercing theory turns on whether the defendant had already incurred some liability to the plaintiff at the time he interposed the corporate structure. . . . Fourth, where the plaintiff may recover in fraud or "deceit" against a defendant directly, that path is preferably to indirect liability via veil-piercing. . . .   Finally, . . . English courts have observed that parties may avoid the harsh effects of the <u>Salomon</u> principle by the exercise of due diligence, for instance, by contracting around a potential problem [on the front end].

10   <u>Id.</u> at 86-90.

11       In the present case, Newman is shielded against personal liability, and the Court lacks

12   personal jurisdiction over him.  He does not own the website facepunch.com; rather, the website

13   is owned by Facepunch Studios Ltd., a British Limited Company.  <u>See</u> Newman Decl. ¶ 4.  The

14   Amended Complaint alleges no facts justifying piercing of the corporate veil, and Righthaven has

15   not even made such a request.  Accordingly, the Amended Complaint should be dismissed against

16   Newman.

17       **2.     *No Personal Jurisdiction Exists over Newman***

18       In addition to the above argument that English corporate law shields Newman from

19   individual liability for the infringement alleged in the Amended Complaint, American legal

20   principles demonstrate that this Court has neither general nor specific personal jurisdiction over

21   Newman.   Telegraphing Righthaven's awareness that personal jurisdiction is lacking over

22   Newman, the Amended Complaint neglects to include explicit allegations of personal jurisdiction

23   (either general or specific), even though it notes that Newman is a resident of Great Britain.  <u>See</u>

24   Doc. 21 at ¶ 4.

25       **a.     *General Personal Jurisdiction***

26       General jurisdiction exists when a Defendant's contacts with the forum state are

27   "substantial" and "continuous and systematic."  <u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>,

28   223 F.3d 1082, 1086 (9th Cir. 2000).  The burden on Plaintiff in establishing general jurisdiction

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

is "fairly high," and requires that the defendant's contacts be of the sort that approximate physical presence.  <u>Id.</u>  Factors considered in determining general jurisdiction include whether the defendant is incorporated in the forum, whether he solicits business there, holds a license, or designates an agent for service of process.  <u>See</u> <u>id.</u>

Here, on the Amended Complaint that Righthaven has filed, general jurisdiction is not a credible basis for establishing personal jurisdiction over Newman.  The Amended Complaint doesn't contain a single allegation of "substantial," or "continuous and systematic" contacts between Newman and Nevada.  Newman's Declaration bolsters the conclusion that general personal jurisdiction is lacking, in that he testifies he has never conducted or solicited business in Nevada, and that he never even traveled to Nevada.

### b.    *Specific Personal Jurisdiction*

Where there is no general jurisdiction, a Court may exercise specific jurisdiction over a foreign defendant if his or her substantial contacts with the forum give rise to the cause of action before the Court.  <u>See</u> <u>id.</u> at 1086.  The Ninth Circuit applies a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process:

> (1)  The non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
> (2)  The claim must be one which arises out of or results from the defendant's forum-related activities.
> (3)  Exercise of jurisdiction must be reasonable.

<u>Doe</u> 248 F.3d at 923 (citations omitted).  Of these three elements, the first prong, purposeful availment, "is the most critical."  <u>Cybersell</u>, 130 F.3d at 416.

Before a defendant may be sued in a forum, the defendant must "purposefully avail" itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (citations and quotations omitted).  This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person."  <u>Id.</u>

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

Purposeful availment requires "affirmative conduct," that is, a deliberate effort by the defendant to direct its activities toward and to make contact with, the forum.  See Unocal, 248 F.3d at 924.  In the present case, Righthaven cannot demonstrate that Newman has purposely availed himself of the benefits of the laws of Nevada.  He has taken no affirmative conduct to direct his activities into the forum.  He does not even own or operate the website.  Newman Decl. at ¶ 4.  Given this fact, no further analysis is needed on the issue of personal jurisdiction.

If the Court disagrees and wishes to further analyze personal jurisdiction, it will have to pierce the corporate veil to find Newman liable for activities of the Company, which owns and operates the Website.  In conducting such analysis, the Court should examine the seminal case of whether the operation of a website from outside the forum can constitute "purposeful availment" is Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) (discussed in Cybersell, 130 F.3d at 418).  There, the court concluded that purposeful availment should be evaluated based on a "sliding scale" of interactivity:  the more interactive the website and the more the defendant directs the activities of the website toward the forum state, the more likely it is that the defendant has purposefully availed itself of doing business in the relevant forum.  Id. at 1124.

In the present case, the Website appears to be on the low end of interactivity.  The Amended Complaint indicates that third parties may post content to the site, but not that items are for sale on the site.  The website merely provides a forum for independent third parties to post topics and issues of interest to them, but neither Newman nor the Company exercises control or direction over these third parties.  Newman Decl. at ¶ 10.

In the Ninth Circuit, purposeful availment in tort cases often is analyzed under the effects test from Calder v. Jones, 465 U.S. 783 (1984):

> As we have previously recognized, Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  Based on these interpretations of Calder, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).

"Express aiming" requires "something more." See Bancroft & Masters, 223 F.3d at 1087. It requires the defendant to "individually target [] a known forum resident." Id. The presence of "individualized targeting" is what is required to satisfy the effects test. See id. at 1088. As the Ninth Circuit noted in Bancroft & Masters, the Plaintiff could not satisfy that factor in Cybersell where "there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually." Id. at 1088 (citing Cybersell, 130 F.3d at 420).

The Calder "effects test" does not apply with the same force to corporate plaintiffs as it does to individual plaintiffs, since a corporation "does not suffer harm in a particular geographic location in the same sense that an individual does." Cybersell, 130 F.3d at 420 (concluding that defendant's web page was not aimed intentionally at the forum state knowing that harm was likely to be caused in the forum to the plaintiff).

Here the three elements under Calder weigh against the exercise of personal jurisdiction. First, the law does not presume that copyright infringement is intentional; to the contrary, the Copyright Act allows for both enhanced damages for willful infringement, and reductions of statutory damages for innocent infringement. See 17 U.S.C. § 504(c)(2). Here third parties post material without direction or control from Newman, the Company or its other officers or directors. Newman Decl. at ¶ 10. Rebutting the argument that the infringement was intentional, Newman disabled the post as soon as he was alerted to allegations of infringement. Id. at ¶ 12. Righthaven never sent a cease & desist letter, id. at ¶ 11; had it done so, Newman would have removed the thread to the post even sooner. Id. These facts show the opposite of intentional infringement.

Second, it is unreasonable to conclude that Newman's actions were expressly aimed at Righthaven, let alone any other residents of Nevada. As a corporation, Righthaven is not entitled to the same entitlements under Calder because it is presumed that a corporation "does not suffer harm in a particular geographic location in the same sense that an individual does." See Cybersell, 130 F.3d at 420. Righthaven's primary argument, impliedly, is that Newman, through his connections with facepunch.com, has specifically intended interaction with residents of every

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

state in that facepunch.com can receive customers from anywhere in the country. However, simply maintaining a website available to residents in the forum state is not purposeful availment. See Cybersell 130 F.3d at 418 (discussing Bensusan Restaurant Corp. v. King, 937 F. Supp. 295, 301(S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997)). Newman had never heard of Righthaven or *The Las Vegas Review-Journal* prior to receiving notice of the instant Amended Complaint. Newman Decl. at ¶ 15.

Third, and contrary to Righthaven's conclusory allegations in paragraphs 13 and 14 of the Amended Complaint,[13] Newman did not cause harm knowing it is likely to be suffered in Nevada. In a factually similar case, the Third Circuit found personal jurisdiction over the defendants was lacking where no evidence existed that they had "expressly aimed their allegedly tortious activity at Pennsylvania knowing that harm was likely to be caused there." See Remick v. Manfredy, 238 F.3d 248, 259 (3rd Cir. 2001). "Given that the website was . . . accessible worldwide, there is no basis to conclude that the defendants expressly aimed their tortious activity at Pennsylvania knowing that harm was likely to be caused there." Id. at 259. Any resulting harm to the plaintiff was found to be "merely incidental." Id.

Like the defendants in Remick, Newman did not "expressly aim" any tortious activities into Nevada. Setting aside the fact that he does not own or operate the website in his individual capacity, it is accessible worldwide and its readership is not focused on or limited to any particular geographic region. Newman Decl. at ¶ 16. Newman disagrees with Righthaven's conclusory allegation that reproduction of the Work on facepunch.com was of specific interest to Nevada residents. Id. To the contrary, his experience has been that interest in facepunch.com is based on visitors' identity as a gamer, regardless of their residency. Id.

Righthaven has alleged nothing to indicate that Newman has taken any specific, deliberate steps to establish a substantial connection with Nevada. There is no indication in the Amended Complaint that Newman has conducted business in Nevada, had any employees or agents in

---

[13] Paragraph 13 of the Amended Complaint alleges: "At all times relevant to this lawsuit, Mr. Newman knew that the Infringement was and is of specific interest to Nevada residents." Paragraph 14 of the Amended Complaint alleges: "Mr. Newman's display of the Infringement was and is purposefully directed at Nevada residents." (Doc. 1).

1  Nevada, or had legitimate Nevada customers.  Indeed, the record establishes that Newman's only

2  contacts with Nevada are "random" or "attenuated," both of which are insufficient to establish

3  purposeful availment and personal jurisdiction.  See Burger King, 471 U.S. at 475.  Thus,

4  Righthaven cannot establish that Newman purposefully availed himself of the privilege of

5  conducting activities in Nevada, thus invoking the benefits and protections of its laws.  See eg.,

6  id.

7  If the Court disagrees and finds purposeful availment by Newman, then the exercise of

8  jurisdiction over Newman would be unreasonable.  For jurisdiction to be reasonable, it must

9  comport with fair play and substantial justice.  See id. at 476.  The burden of demonstrating

10  unreasonableness rests with the defendant, and the defendant must show a "compelling case."  Id.

11  at 476 – 77.  Seven factors should be weighed in evaluating the reasonableness of exercising

12  personal jurisdiction in a given case:

> (1)  the extent of the defendant's purposeful interjection into the forum state, (2)  the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest and convenient and effective relief; and (7) the existence of an alternative forum.

18  Bancroft & Masters, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476-77).

19  Analyzing the above factors, the extent of Newman's purposeful interjection into the

20  forum state's affairs was minimal.  The Amended Complaint alleges only a single incidence.

21  "The smaller the element of purposeful interjection, the less the jurisdiction to be anticipated and

22  the less reasonable is its exercise."  Core-Vent Corp. v. Nobel Invest. AB, 11 F.3d 1482, 1488

23  (9th Cir. 1993) (citations omitted).  Accordingly, this factor weighs against personal jurisdiction.

24  The second factor of reasonableness, the burden on defendants, weighs strongly against

25  jurisdiction.  "The unique burdens placed upon one who must defend oneself in a foreign legal

26  system should have significant weight in assessing the reasonableness of stretching the long arm

27  of personal jurisdiction over national borders."  Asahi Metal Industry Co. v. Superior Court, 480

28  U.S. 102, 114 (1987).  The use of an agent in the United States might alleviate a foreign

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

defendant's burden, see Core-Vent, 11 F.3d at 1488, but Newman does not have such an agent. Newman Decl. at ¶ 14.  Further, he has testified under oath that he has never travelled to Nevada. Id. at ¶ 3.  Newman has also testified that defending this action in Nevada would be unduly burdensome and expensive for him.  Id. at ¶ 18.  Thus, this factor weighs strongly against personal jurisdiction over Newman.

Regarding the third factor, "litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." Sinatra v. National Enquirer, 854 F.2d 1191, 1199 (9th Cir. 1988). The Court should presume that Great Britain has a sovereign interest in adjudicating the claim against a British individual resident.  Doe v. Geller, 533 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) (citing Harris Rutsky and Co. Ins. Serv., Inc. v. Bell and Clements Ltd., 328 F.3d 1122, 1133 (9th Cir. 2003)).  Further, the website forum that is at the heart of this dispute is controlled from England.   Newman Decl. at ¶ 7.   Accordingly, this factor weighs strongly against the reasonableness of exercising jurisdiction over Newman.

The fourth factor, the forum state's interest in adjudicating the dispute, weighs against the reasonableness of exercising jurisdiction over Newman.  Although Righthaven is the party plaintiff, the Agreement that it has with Stephen's Media, LLC indicates that Stephen's Media is the true owner of the underlying copyrights.  Thus, Righthaven does not have standing.  Further, Nevada "is not the worldwide regulator of free speech in the digital age." Geller, 533 F. Supp. 2d at 1008.  As discussed above, the Copyright Act was not intended by Congress to be applied extraterritorially.  Omega S.A. v. Costco Wholesale Corp., 541 F.3d 982, 987 (9th Cir. 2008). The District of Nevada "is not an international court of internet law." Geller, 533 F. Supp. 2d at 1009.  Accordingly, this factor weighs against jurisdiction.

The fifth factor, the most efficient judicial resolution of the controversy, weighs against jurisdiction.  This factor requires the Court to evaluate where the witnesses and evidence are likely to be located. See Core-Vent, 11 F.3d at 1489.  Given that the website is owned by a British company, whose sole offices are located in England, the witnesses and evidence are likely to be located in England.

The sixth factor, the importance of the forum to the plaintiff's interest in convenient and effective relief, weighs against jurisdiction in Nevada.  Righthaven has not shown that the claim cannot be effectively remedied in England.  See Geller, 533 F. Supp. 2d at 1010 (quoting Sinatra, 854 F. 2d at 1200).  Further, Righthaven fails to articulate any concerns that paint Nevada as "important" to its claim.  Id.

Finally, the seventh factor, the existence of an alternative forum, also weighs against jurisdiction over Newman.  "The plaintiff bears the burden of proving the unavailability of an alternative forum."  Core-Vent, 11 F.3d at 1490.  Righthaven has made no such showing that it would be precluded from suing in England.  Righthaven's preference of venues "is not the test." Geller, 533 F. Supp. 2d at 1010 (quoting Roth v. Garcia Marquez, 942 F. 2d 617, 625 (9th Cir. 1991)).

Just as in Geller, the balance of the above factors weighs against jurisdiction over Newman.  There, the court found that it would be "unreasonable and unfair" to assert jurisdiction over British residents in a suit over an allegedly tortious facts sent to a third party in California. "Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff in the forum State, the exercise and personal jurisdiction . . . in this instance would be unreasonable and unfair."  Asahi, 480 U.S. at 116.

For all of the above reasons, the Court should find it unreasonable to exercise personal jurisdiction over Newman, even if it finds purposeful availment, which the facts dictate against.

## IV.  **CONCLUSION**

For all of the above reasons, the Amended Complaint against Newman should be dismissed for lack of both subject matter jurisdiction and personal jurisdiction.  Subject matter jurisdiction is lacking because Righthaven has no standing, as Stephens Media transferred to Righthaven only the right to sue for infringement, but none of the underlying copyrights enumerated in Section 106 of the Copyright Act.  Further, the Copyright Act may not be applied to infringement that occurs outside the borders of the United States, and here the infringement occurred in England.  Similarly, personal jurisdiction is lacking over Newman because he does not own the Website; a British Limited Company does, providing Newman with a shield against

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1   personal liability.   Further, it would violate "traditional notions of fair play and substantial

2   justice" to force Newman to defend a lawsuit in Nevada.   Newman is a resident of England who

3   has never been in Nevada, nor conducted or solicited business there.   Righthaven cannot

4   demonstrate that Newman purposely availed himself of the benefits of the laws of Nevada, or that

5   the effects of the alleged infringement were targeted into or felt specifically in Nevada.

6   Accordingly, this Amended Complaint should be dismissed with prejudice.

7   Righthaven's motivation in filing suit against Newman is suspect.   Even if Righthaven

8   were deemed the prevailing party, it would not be entitled to recover either statutory damages or

9   attorneys' fees against Newman, since copyright registration for the Article was not obtained until

10   after the alleged infringement.   Statutory damages and attorneys' fees are available only where

11   registration is obtained prior to infringement commencing.   See Derek Andrew, Inc. v. Poof

12   Apparel Corp., 528 F.3d 696, 700-01 (9th Cir. 2008).   The Amended Complaint alleges that the

13   infringement commenced on September 25, 2010, but registration for the copyright was not

14   secured until October 6, 2010.   Compare Doc. 21 at ¶ 20 with id. at ¶ 31.   Even if Righthaven

15   could surmount the challenges of subject matter and personal jurisdiction, which it cannot, it

16   would be entitled to very little other possible relief.   Thus, these facts indicate that Righthaven's

17   true motivation is to target and extract settlements from specific defendants, like Newman, who

18   will have difficulty defending against litigation (because of cost or distance or, in this case, both).

19   Further, Righthaven cannot claim with a straight face that it has been harmed.   Righthaven

20   acknowledges that the Website attributed *The Las Vegas Review-Journal* as the original source of

21   the Article for the entire time in which the Article appeared on the Website.   See Doc. 21 at ¶ 17.

22   As soon as he learned of the Amended Complaint, Newman disabled the thread to the post on the

23   Website, (Newman Decl. at ¶ 12), thus satisfying that portion of Righthaven's prayer for relief

24   seeking that the reproduction be removed.   See Am. Compl., at Prayer for Relief.

25   Finally, as Judge Hunt found in dismissing Righthaven's Amended Complaint against

26   Democratic Underground, Righthaven's only right under the SAA is to "bring and profit from

27   copyright infringement actions."   Democratic Underground, 2011 WL 2378186, at *2.   It

28   possesses none of the rights provided in Section 106 of the Copyright Act.

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1    For all the reasons stated above, Righthaven's Amended Complaint against Newman must

2    be dismissed.

3    DATED this 1st day of August, 2011.

4                                                   BROWNSTEIN HYATT FARBER SCHRECK LLP

5

6                                                   By: /s/ Anthony J. DiRaimondo
                                                    Kirk B. Lenhard, Nevada Bar No. 1437
7                                                   Anthony J. DiRaimondo, Nevada Bar No. 10875
                                                    100 N. City Parkway, Suite 1600
8                                                   Las Vegas, NV 89106
                                                    klenhard@bhfs.com
9                                                   adiraimondo@bhfs.com
                                                    (702) 382-2101
10

11                                                  BONE McALLESTER NORTON PLLC

12                                                  By: /s/ Stephen J. Zralek
                                                    Stephen J. Zralek, *Admitted pro hac vice*
13                                                  511 Union Street, Suite 1600
                                                    Nashville, TN 37212
14                                                  szralek@bonelaw.com
                                                    (615) 238-6305
15
                                                    Attorneys for Defendant
16                                                  GARRY NEWMAN

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

BROWNSTEIN HYATT FARBER SCHRECK, LLP, A LAW CORPORATION
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 SEVENTEENTH STREET, SUITE 2200
DENVER, CO 80202-4432

1

## CERTIFICATE OF SERVICE

2      Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing

3   Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK,

4   LLP, and that on the 1st day of August, 2011, the foregoing **DEFENDANT GARRY**

5   **NEWMAN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK**

6   **OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION**

7   was served via electronic service to the address shown below:

8      Shawn A. Mangano, Esq.

9      SHAWN A. MANGANO, LTD.
       9960 West Cheyenne Ave., Suite 170

10     Las Vegas, NV 89129-7701
       **shawn@manganolaw.com**

11     *Attorney for Plaintiff*
       *Righthaven, LLC*

12

13                      /s/  Paula Kay

14                      an employee of Brownstein Hyatt Farber Schreck, LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28