# Exhibit B

1

1            UNITED STATES DISTRICT COURT
                 DISTRICT OF NEVADA
2    BEFORE THE HONORABLE ROGER L. HUNT, U.S. DISTRICT JUDGE

3

RIGHTHAVEN, LLC, a              :
4   Nevada limited-liability     :
company,                        :
5                                :   No. 2:10-cv-01356-RLH-GWF
        Plaintiff,               :
6                                :   July 14, 2011
        vs.                      :
7                                :   Las Vegas, Nevada
DEMOCRATIC UNDERGROUND,         :
8   LLC, a District of           :
Columbia limited-               :
9   liability company; and       :
DAVID ALLEN, an                 :
10  individual,                  :
                                 :
11      Defendants.              :
                                 :
12  ─────────────────────────    :
                                 :
DEMOCRATIC UNDERGROUND,          :
13  LLC, a District of           :
Columbia limited-               :
14  liability company,           :
                                 :
15      Counterclaimant,         :
                                 :
16      vs.                      :
                                 :
17  RIGHTHAVEN, LLC, a           :
Nevada limited-liability        :
18  company; and STEPHENS        :
MEDIA, LLC, a Nevada            :
19  limited-liability            :
company,                        :
20                               :
        Counterdefendants.       :
21  ─────────────────────────    :

22

23        TRANSCRIPT OF ORDER TO SHOW CAUSE [116]

24

25

**Exhibit B**

2

```
 1   APPEARANCES:

 2   For the Plaintiffs:        SHAWN MANGANO
                                COLBY WILLIAMS
 3                              DONALD CAMPBELL
                                Attorneys at Law
 4

 5   For the Defendants:        LAURENCE F. PULGRAM
                                KURT OPSAHL
 6                              Attorneys at Law

 7

 8

 9

10

11

12

13

14

15   FTR No. RLH/20110714

16
         (Transcript produced from digital voice recording;
17            transcriber not present at proceedings)

18

19

20

21

22   Transcribed by:           Donna Davidson, RDR, CRR, CCR 318
                               Certified Realtime Reporter
23                             400 South Virginia Street
                               Reno, Nevada  89501
24                             (775) 329-0132

25
```

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

3

1          LAS VEGAS, NEVADA, JULY 14, 2011, 9:04 A.M.

2                        --oOo--

3                  P R O C E E D I N G S

4

5          THE COURT:  Be seated.

6          THE CLERK:  Righthaven, LLC, versus Democratic

7    Underground, LLC, et al, 2:10-cv-1356-RLH-GWF.

8          This is the time set on order for a show cause

9    hearing and also for the motion to reconsider.

10         Counsel, please note your appearances for the

11   record.

12         MR. MANGANO:  Shawn Mangano on behalf of

13   plaintiff Righthaven, LLC.

14         MR. WILLIAMS:  Good morning, Your Honor, Colby

15   Williams on behalf of Stephens Media.

16         MR. CAMPBELL:  Donald Drew Campbell on behalf

17   of Stephens Media.

18         MR. PULGRAM:  Laurence Pulgram on behalf of

19   Democratic Underground.

20         MR. OPSAHL:  Kurt Opsahl, the Electronic

21   Frontier Foundation, on behalf of Democratic

22   Underground.

23         THE COURT:  Thank you.

24         MR. WILLIAMS:  Excuse me, Your Honor.  I heard

25   your clerk say this was also set for a motion for

**Exhibit B**

4

1   reconsideration.  I didn't know if I misheard that.  I

2   wasn't aware that that was also on calendar, or if it

3   was just the order to show cause.  Because the briefing

4   isn't complete on the motion for reconsideration.

5           THE COURT:  If that was said, and I didn't

6   catch if that was said; but, no, we're not hearing the

7   motion for reconsideration here.

8           This is the time for Righthaven to respond to the

9   order to show cause why the Court should not issue

10  sanctions.

11          Counsel, I'm going to give you 10 minutes to

12  argue your position and your response.  Between the

13  response and your affidavit, obviously, the arguments

14  were repeated, sometimes more than once.  So you don't

15  need to repeat them.  But I will give you the 10

16  minutes.

17          And you have liberty, if you wish, to respond to

18  the Demographic Underground's reply.  The Court will

19  decide when you've finished whether or not it feels it

20  necessary to give Democratic Underground an opportunity

21  to reply to your comments with respect to their reply.

22          MR. MANGANO:  Okay, Your Honor.  So just so I

23  understand your procedure, should I -- there's no need

24  to reserve any time at this point to respond to

25  Democratic Underground?  I mean, because, you're

**Exhibit B**

5

1   correct, I have set --

2         THE COURT:  If I give them an opportunity to

3   reply to your comments, I very likely will give you a

4   short period of time, if you feel it's necessary, to

5   respond to that without just repeating the arguments

6   that you've made before.

7         MR. MANGANO:  Yes, Your Honor.  In view of

8   that, we have set forth our position in our response to

9   the order to show cause, while they've set forth in my

10  declaration and they've set forth in the OSC response, I

11  wish to highlight the fact that upon receiving this

12  Court's order, I took all steps necessary to immediately

13  take corrective action in view of what was set forth

14  with regard to compliance with the Certificate of

15  Interested Parties.

16       I had entered this case fairly late into the

17  briefing on the motion to voluntarily withdraw the

18  complaint.  In fact, the strategic alliance agreement

19  was not produced until late -- well, into early this

20  year, which obviously you unsealed.

21       During that time period we were dealing with

22  significant issues with regard to the confidentiality of

23  that document, the confidentiality of other materials,

24  responding to supplemental briefing which, admittedly,

25  is -- the briefing in this case has been significant.

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

6

1      From a personal standpoint, I did not reflect on

2 the Certificate of Interested Parties at that time as to

3 what was contained in it and the impact of the strategic

4 alliance agreement on it.

5      I'm not disagreeing with the Court's analysis,

6 I'm just stating a simple fact that I didn't fully

7 appreciate when that document came out its effect on the

8 other -- on the earliest file in the case.

9      THE COURT:  Well, if it gives you any comfort,

10 counsel, the Court is not holding you responsible for

11 the failure -- you, personally, responsible for the

12 failure.

13      MR. MANGANO:  Since it's more -- I will

14 breathe a sigh of relief because I do honor my

15 responsibilities before this Court.  And that's why I

16 have taken corrective action.

17      And despite any disagreement that may exist, Your

18 Honor, you've issued a decision.  I intend to comply

19 with it.  I intend to have my clients comply with it,

20 not only in this case, but in all cases moving forward.

21      I also would like to point out that there has

22 been an argument made, and I think it's somewhat

23 misconstrued by Democratic Underground that somehow the

24 OSC response, which I prepared, and which I submitted

25 supporting declaration, sought to cast blame on two

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -   (775) 329-0132

**Exhibit B**

7

1    in-house lawyers, Mr. Chu and Mr. Coons.

2         Upon joining Righthaven and working with Mr. Chu

3    and Mr. Coons, I found them to be outstanding attorneys.

4    They were very diligent.  They had addressed

5    significantly complex issues, personal jurisdiction

6    issues.

7         There was a recent decision by I believe Judge

8    Navarro, and there was another decision in Southcoast

9    Partners case which dealt with personal jurisdiction in

10   view of the tension between some existing Ninth Circuit

11   case law, Brayton Purcell being one of them, and whether

12   or not in -- personal jurisdiction is appropriate in the

13   venue in which the copyrighted material emanated.  Those

14   are very, very difficult issues, Your Honor.  And these

15   were very skilled attorneys that addressed those issues.

16        That said, and in view of my own experience,

17   which is quite significant compared to Mr. Chu and

18   Mr. Coons, I honestly cannot believe that they fully

19   appreciate their disclosure obligation.

20        It's not an aspersion upon them.  I think it's

21   more of a reflexion, a common-sense reflexion of that I

22   don't think that -- I think they may have -- as a matter

23   of fact, I know that it was -- it's been represented to

24   me, that they performed some sort of analysis or case

25   law or whatever, and that they came up with the

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

8

1   Certificate of Interested Parties, and they said okay,

2   you know, that's what happened.

3           THE COURT:  What's their status currently?

4           MR. MANGANO:  Mr. Chu is not practicing law

5   currently.  It's my understanding that he suffered a

6   fairly significant back injury.

7           THE COURT:  I understand he's recovering from

8   back injury.

9           MR. MANGANO:  And I have spoken to him.  He,

10  in fact, contacted me because he was concerned over some

11  of the representations that had been disseminated in the

12  media based upon what were my perceived allegations

13  against his misconduct.

14          I don't believe that he committed any misconduct,

15  not sanctionable misconduct, given the standards that

16  are applicable.  I think that it was an honest mistake.

17  I think that everyone, including Mr. Chu and Mr. Coons,

18  who were responsible either for registering the

19  copyrighted work or drafting the complaint --

20          THE COURT:  So he's no longer with the

21  company?

22          MR. MANGANO:  No.  And the same thing with

23  Mr. Coons.  He's out, and he's started his own firm, my

24  understanding.

25          These two individuals who are on the Certificate

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -   (775) 329-0132

**Exhibit B**

9

1  of Interested Parties knew it was the R-J.  They

2  reference the R-J work.  They attached the R-J work.

3      In fact, this morning I pulled articles, because

4  I know it's been widely reported in the media, and I did

5  a search; and, I mean, there's an article by Mr. Green,

6  who is in the -- Steve Green from the Sun is here in

7  court today, you know, that I found that dated back to

8  early May -- April, May of 2010, which aver to the

9  relationship between Stephens Media's enforcement of its

10  copyrights, the family of Warren Stephens, that the R-J

11  is owned by Stephens Media.

12      So I understand that that might not be enough for

13  the Court to perform a recusal analysis, because you're

14  not expected -- and, for the most part, when you've got

15  litigants, you're obviously not going to be out doing

16  your independent research because --

17      THE COURT:  Well, you're correct, sir, and

18  that's because the Court's not obligated to do it, you

19  are.

20      But, more important, the representations were

21  that -- while these articles came from the R-J, was that

22  Righthaven had now been assigned the exclusive right to

23  pursue the violation of those.

24      So that does not put the Court -- even if it had

25  done the research, doesn't put the Court on notice that

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -   (775) 329-0132

**Exhibit B**

10

1    Stephens Media had an interest, a pecuniary interest.

2         MR. MANGANO:  Your Honor, you're correct that

3    when -- first of all, the allegations with regard to the

4    assignment, I know that there's a lot -- and I'm hopeful

5    that at some point we'll get an opportunity to have --

6    we have rather esteemed counsel on both sides to address

7    the pending motions that are before the Court.  But

8    you're correct.  The assignment issue may not or does

9    not provide the direct pecuniary interest.  That's --

10   that's -- I think that's fair.

11        That said, Stephens Media was brought into the

12   case only 20 days after the Certificate of Interested

13   Parties that's deemed defective was filed.

14        That should at least have triggered -- absent

15   anything else, absent news articles, absent averments in

16   the complaint, anything like that, that there may be an

17   interest in Stephens Media's part.  If Your Honor -- if

18   Stephens Media was IBM and you had a more than 10

19   percent holding in IBM, they were brought into the case,

20   you would have to recuse yourself under Federal Civil

21   Procedure 7.1.

22        So I -- I understand the Court's concern.  I

23   understand that given the manner in which you have

24   interpreted the local rule requirement, we have done

25   everything necessary to correct that mistake.  And I've

**Exhibit B**

11

1   affirmatively done that.

2        I don't want to stand here and point fingers at

3   Mr. Chu or Mr. Coons. I really don't. These are two

4   exceptional lawyers with -- should Mr. Chu, and I urge

5   him to do so, come back and practice law, he is an

6   exceptional writer. He's an exceptional attorney.

7        I would hate to have the results of their

8   participation in this case at all reflect upon their

9   ability or their future status as counsel in this state

10  practicing before this court and in this jurisdiction as

11  a whole.

12       I can say nothing more that -- I believe this was

13  an honest mistake. This was not an intentional act to

14  conceal Stephens Media. That's my honest belief, Your

15  Honor. And I don't feel that it rises to the level of

16  the standards of except for. You may feel otherwise.

17  And reasonable minds can disagree. But I feel the

18  circumstances demonstrate otherwise.

19       And unless you have any other questions, Your

20  Honor, I'll yield to opposing counsel.

21            THE COURT: I don't have any questions.

22            MR. MANGANO: Thank you, Your Honor.

23            THE COURT: Given what he's said, you've

24  responded to his written document and responded quite

25  adequately, in the Court's view. I don't know that

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

12

1    there's anything about what Mr. Mangano just said that

2    suggests to the Court that I need to hear from

3    Democratic Underground.

4                MR. OPSAHL:  Thank you, Your Honor.

5                THE COURT:  Let me make it clear that the

6    Court is also not here to find fault with Mr. Coons or

7    Mr. Chu.

8            I do find it significant, however, that in all of

9    this -- and I -- I've read and reread this sentence from

10   the statement in the response, and I quote from the

11   second page:  It is certainly understandable how Local

12   Rule 7-1.1 could have arguably been reasonably construed

13   to not require the disclosure of Stephens Media's

14   interest in any recovery.

15           I was impressed that you were able to get three

16   hedge words or qualifiers within the space of four words

17   in that sentence and wondered if maybe you ran out of

18   them.

19           That significant, I guess, to me is is that we

20   don't have any affidavit from Mr. Chu or Mr. Coons:

21   One, that they made a mistake; two, that they didn't

22   understand it; three, that they didn't understand Local

23   Rule 7.1-1.  But, more importantly, I don't have any

24   evidence that they even knew about the relationship;

25   that they were familiar with the terms and circumstances

**Exhibit B**

1  of the strategic agreement.

2      An argument that they arguably could have

3  reasonably construed to not require that, in the Court's

4  opinion, is, frankly, ludicrous.

5      Rule 7.1-1, the purpose of it, the primary

6  purpose of it, is to make sure that the Court becomes

7  aware, as soon as possible, of any need to recuse itself

8  because of any conflict of interest.  But it's the

9  violation of the rule, in addition to all of the other

10  things that took place in this case and any other cases

11  that the Court has in front of it -- and I think there

12  are -- I think there are or were 34 cases that were

13  assigned to me by Righthaven in this case.  I do not

14  understand the argument that an agreement whereby

15  Stephens Media got half of any recovery or settlement

16  could any -- in any way be construed as not having a

17  direct pecuniary interest.

18      And, again, I'm not here to sanction Mr. Coons or

19  Mr. Chu.  And I will tell you now that I do not think

20  that the Court's sanction power is limited to sanction

21  Mr. Chu or Mr. Coons.  The Court does have the right to

22  sanction an attorney when he violates it.

23      I don't have any evidence that they intentionally

24  kept this from the Court.  But I have a lot of evidence

25  that Righthaven intentionally kept it.  This is not an

14

1    issue of negligence, in the Court's view.  It goes to

2    the evidence of an intentional avoidance of disclosing

3    information and specific direct statements contrary to

4    that.

5         I think I have sufficient inherent power to

6    sanction.  And I think Rule 11 gives me even additional

7    power to sanction for violation of this rule under these

8    circumstances.

9         Counsel that was representing Righthaven,

10   Mr. Coons and Mr. Chu, were both in-house counsel, if

11   you will.

12        Mr. Gibson, who took over and I think was counsel

13   at the time that the SAA was disclosed is the CEO of

14   Righthaven.  So I think for purposes of the language of

15   7.1-1, in this instance, Righthaven qualifies at a party

16   acting pro se.  Because it's their in-house people doing

17   it, it's not outside counsel as they have now.

18        In the Court's view, the arrangement between

19   Righthaven and Stephens Media is nothing more nor less

20   than a law firm, which, incidentally, I don't think is

21   licensed to practice law in this state, but a law firm

22   with a contingent fee agreement masquerading as a

23   company that's a party.

24        There was a clear pecuniary interest, in the

25   Court's view, by Stephens Media.  Mr. Gibson negotiated

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -   (775) 329-0132

**Exhibit B**

15

1   the agreement.  He signed the agreement.  He certainly

2   knew the agreement and its contents.  He has a

3   significant amount of experience.  At least that is

4   represented to me.  I think this has been part of a

5   concerted effort to hide Stephens Media's role in this

6   litigation.

7        Plaintiff claimed that it had various exclusive

8   rights when it knew that the ability to exercise those

9   rights were retained exclusively by Stephens Media.  It

10  constantly and consistently refused to produce the

11  agreement.  And it wasn't until after the Court ordered

12  that it be disclosed and then unsealed that they started

13  admitting their reasons.

14       There was, in fact, in the -- in Stephens Media's

15  reply to their motion -- in support of their motion to

16  dismiss, that they state, and I quote, "Stephens Media

17  has never been identified or disclosed as a party who

18  has a direct pecuniary interest in the outcome of any

19  Righthaven case, and for good reason," close quote.

20       The representations about the relationship and

21  the rights of Righthaven were misrepresentations.  They

22  were misleading.  And that -- the failure to disclose

23  them -- and you can speak and argue that there's no case

24  law or there are no -- there's no definition in the rule

25  that lays out what a direct pecuniary interest is.  I

**Exhibit B**

1   don't know how more direct you can get.  The fact that

2   it has to go to Righthaven first and then go to Stephens

3   Media, in the Court's view, does not remove it from

4   being a direct pecuniary interest.  It was there.  They

5   had the right to have -- they had the right, actually,

6   to settle claims on their own.

7        And the Court finds it troubling, quite frankly,

8   in all of the cases that I'm aware of filed in this

9   district, and I've lost count as to how many there were,

10  that not only were the terms of the agreement disclosed,

11  but that there was a consistent, repeated failure to

12  identify Stephens Media as having any interest in this

13  lawsuit.

14       And it isn't enough to say, well, the Court

15  should have been on notice of it.  The Court has the

16  right to accept the representations made by a party

17  through counsel.  And when it finds that those

18  representations are not true and, having looked at all

19  this evidence, finds that they are intentionally untrue,

20  the Court feels that there is a necessity of and finds

21  that there is an obligation on the Court to sanction

22  Stephens Media.

23       I've given a lot of thought as to what kind of

24  sanction is required.  I appreciate the fact that

25  counsel has attempted to rectify the problem that has

17

1  existed.  It does not change or affect the Court's

2  opinion as to whether or not it was an accident or a

3  misunderstanding as opposed to being an intentional --

4  I'll call it failure to disclose, for want of a stronger

5  term, although I think a stronger term is justified.

6  But as part of the sanction, the Court is going to order

7  that every case Righthaven has in any jurisdiction in

8  this country must be provided with a copy of this

9  Court's decision about the agreement, the one on

10  standing, and that the agreement be disclosed to parties

11  that Righthaven has sued.

12       The Court is also going to order a monetary

13  sanction against Righthaven, itself, in the amount of

14  $5,000 and order that Local Rule 7.1-1 will be properly

15  complied with, either retrospectively or prospectively,

16  in all cases that are filed by Righthaven with respect

17  to this agreement.

18       Is there anything -- yes, counsel?

19       Incidentally, that monetary sanction will be paid

20  within two weeks to the clerk of court.

21       MR. MANGANO:  Your Honor, just a couple points

22  of clarification.  And I understand that you will be

23  issuing a written opinion based upon what we -- based

24  upon this hearing, I assume?

25       THE COURT:  I'm not sure I will, counsel.

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

18

1   I'll give that some consideration.

2           MR. MANGANO:  Okay.  Well, in view of that

3   uncertainty, I'd just --

4           THE COURT:  If I do issue a written opinion,

5   counsel, I'm also going to direct that it be provided,

6   filed in every other case that Righthaven has against

7   anybody on this --

8           MR. MANGANO:  Okay.

9           THE COURT:  Along these issues.

10          MR. MANGANO:  Okay.  Your Honor, just for

11  point of clarification, you've mentioned a couple bases

12  for your sanction power; and it's not to challenge your

13  sanction powers, but to clarify the record.

14      You've mentioned Rule 11, you've mentioned the

15  inherent power, and you've mentioned the local rule.

16  These sanctions that you just enumerated, do those fall

17  under, one, all or -- one specific sanction power or

18  under all your inherent power --

19          THE COURT:  I'm invoking all of them, counsel.

20          MR. MANGANO:  Okay.  Thank you, Your Honor.

21      And a second point of clarification is that you

22  said that parties -- all parties who are sued to be

23  provided with a copy of the agreement, the strategic

24  alliance agreement.

25          THE COURT:  That will not apply to those cases

**Exhibit B**

19

1    that have been dismissed, unless there's going to be an

2    appeal in those cases.

3            MR. MANGANO:  Okay.  So all -- essentially all

4    pending matters, would that be --

5            THE COURT:  Yes.

6            MR. MANGANO:  Okay.  And would your order

7    include -- since as the Court, I'm sure, is aware, we

8    have a clarification and we have what's now a restated

9    version of the SAA, restated and amended version, would

10   you like those provided as well?

11           THE COURT:  No.

12           MR. MANGANO:  Just the SAA?

13           THE COURT:  And no -- any revisions,

14   amendments after the fact, in the Court's view, is

15   irrelevant to this issue.

16           MR. MANGANO:  Okay.  Thank you, Your Honor.

17           THE COURT:  Thank you.

18       Any questions from other defendant?

19           MR. OPSAHL:  It may also be useful for some of

20   those cases to have a copy of Righthaven's operating

21   agreement.

22           THE COURT:  I beg your pardon?

23           MR. OPSAHL:  It may also be useful to -- for

24   the defendants in those cases to have a copy of

25   Righthaven's operating agreement along with the

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

**Exhibit B**

20

1    strategic alliance.

2           THE COURT:  I think that was part of my order,

3    counsel, is that the operating -- well, are you talking

4    about the strategic alliance agreement?

5           MR. OPSAHL:  There's a strategic alliance

6    agreement as between Stephens Media and Righthaven; then

7    there's also the Righthaven operating agreement, which

8    is the organizational document for Righthaven.

9           MR. MANGANO:  Your Honor, that's -- the issue

10   here is the failure to disclose Stephens Media, which is

11   a party to the --

12          THE COURT:  Yes.  I will not include that,

13   counsel.  I don't think it's relevant to this.

14          MR. OPSAHL:  Okay.  Thank you, Your Honor.

15          MR. MANGANO:  And, Your Honor, there are cases

16   pending, such as in the District of Colorado, which

17   involve -- do not involve Stephens Media, but they

18   involve MediaNews Group as the holder of the work that's

19   been assigned.

20          Would your order require a production of the SAA

21   or the production of the operative agreement, which I

22   believe has been publicly filed already in the lead case

23   that's resulted in a stay of some 34 actions?

24          THE COURT:  In Colorado, you're talking about?

25          MR. MANGANO:  Yes.  All the Colorado

21

1    actions -- all the Colorado actions, to my knowledge, do

2    not involve Stephens Media content.

3         I just want to make sure that when you say

4    produced in all jurisdictions, it's not all -- not all

5    jurisdictions involve Stephens Media content.  So --

6              THE COURT:  Are the agreements, the strategic

7    agreements the same?

8              MR. MANGANO:  No.  They are in a different

9    form.  The content is significantly -- it looks

10   different.  It's very -- the document that controls

11   those agreements has been produced and has not been

12   sealed.

13             THE COURT:  All right.

14             MR. MANGANO:  So the only other jurisdiction

15   would be there's a pending action in South Carolina, and

16   there are the pending actions in this jurisdiction that

17   involve Stephens Media.

18             THE COURT:  You are obligated to the one in

19   South Carolina, but you're also obligated to advise the

20   Colorado court of this decision.

21             MR. MANGANO:  Thank you, Your Honor.

22             MR. PULGRAM:  And, finally, Your Honor,

23   Laurence Pulgram.  You stated that if you issued a

24   ruling in writing on this matter today, on this OSC,

25   that you would ask that it be provided to the other

22

1   courts.

2        In the absence of that written ruling, would it

3   make sense for the transcript of your ruling, up to the

4   colloquy here, to be provided to other courts in lieu of

5   a written order, to save Your Honor from having to write

6   the written order?

7        MR. MANGANO:  I think that's the

8   understanding.  If there's no order, I'm to produce the

9   transcript, correct?

10       THE COURT:  Yes.  I think that's a good

11  suggestion.  And that will be the order if it wasn't

12  clear otherwise.

13       Anything else?

14       MR. MANGANO:  No, Your Honor.

15       MR. OPSAHL:  No, Your Honor.

16       THE COURT:  We'll be in recess.

17            (The proceedings were concluded at

18            9:35 a.m.)

19                  *    *    *

20

21

22

23

24

25

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -   (775) 329-0132

**Exhibit B**

23

1                           -o0o-

2       I certify that the foregoing is a correct

3       transcript from the electronic sound recording

4       of the proceedings in the above-entitled matter.

5

6       _____        _7/14/11__

7       Donna Davidson, RDR, CRR, CCR #318        Date
        Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DONNA DAVIDSON, RDR, CRR, CCR #318 - (775) 329-0132

**Exhibit B**